Klein et al., Appellants, *v.* Scranton Life
Insurance Company et al.

Argued December 15, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Alfred M. Klein,* with him *Vosburg & Vosburg,* for appellants.

*William J. Fitzgerald,* of *Kelly, Fitzgerald & Kelly,* for appellees.

OPINION BY STADTFELD, J., March 11, 1940:

This is an appeal from a decree of the Court of Common Pleas of Lackawanna County dismissing a bill in equity brought by the plaintiffs, Alfred M. Klein and others, against the Scranton Life Insurance Company and its directors, seeking to compel the defendants to permit the plaintiffs to examine the books of the corporation and to copy its list of shareholders. The bill also sought to have an amendment to the by-laws of the corporation declared invalid and to set aside the

purported election of the directors of the corporation under the aforesaid amendment to the by-laws.

The answer to the bill denies that the plaintiffs, or any of them, at any time presented any proper reason to the officers, directors or shareholders of the company which would justify permitting an inspection of the books of the company for any purpose whatsoever, and further, that the change in by-laws and the election of directors thereunder, was accomplished strictly in accordance with law and with the existing by-laws of the company. A replication was filed and issue joined. The hearing on the bill was held before HOBAN, J. on March 9, 1939, and the plaintiffs filed requests for findings of fact and conclusions of law on March 31, 1939. On July 26, 1939, the court filed an opinion, dismissing the bill to which exceptions were taken by the plaintiffs on July 31, 1939. The court below, on October 20, 1939, filed an opinion dismissing the exceptions of the plaintiffs to the conclusions of law and decree nisi, and directing the entry of a final decree, from which action this appeal has been taken.

On June 2, 1937, the plaintiff, Alfred M. Klein, being then a stockholder of the Scranton Life Insurance Company, directed a request to the secretary of the corporation, asking for an opportunity to examine the books and records of the corporation. The officers of the corporation disregarded this request, and, subsequently, the plaintiff, Klein, again wrote to the company renewing his request, which request was turned over to counsel for the corporation. The plaintiff stated in a letter dated August 3, 1937, that he desired to ascertain the value of his shares and also to copy a list of the shareholders in order that he might solicit proxies for voting at the annual meeting of the corporation's shareholders. A number of conferences were held between several of the plaintiffs, the plaintiff Klein being joined by other shareholders in the request, but the officers of the company persisted in their refusal to permit the plaintiffs

to make extracts from the books. The plaintiff Klein was allowed to inspect the general ledger of the corporation and to inspect two of the corporation's eight stock ledgers, the inspection being confined to one occasion, the examination lasting for approximately two hours. He was not permitted to make any notes of what he saw.

At the annual meeting of the shareholders of the corporation held January 28, 1938, Klein, for himself and his coplaintiffs, renewed his request to be permitted to examine the books and records of the company, which request was refused by the president, apparently in pursuance of a resolution adopted by the board of directors of the corporation that day. This request for examination of the books of the corporation and permission to copy a list of the shareholders was renewed at the annual meeting on January 27, 1939, and was again refused.

At the shareholders' meeting on January 28, 1938, which was attended by seventeen shareholders of the corporation, representing 10,508½ shares out of a total of approximately 2300 stockholders holding 34,000 shares, there being 9381 shares represented by proxies, a resolution was offered under which the president was directed to refer to counsel the drafting of a proposed amendment to the corporation's by-laws, which would change the tenure of the directors, which amendment was to be offered for adoption at the following annual meeting to be held January 27, 1939. No further or other notice of the proposed amendment was given to the general body of stockholders. Nor was the form of the proposed change submitted.

At the shareholders' meeting held January 27, 1939, the amendment prepared pursuant to the resolution in question was offered. The plaintiff Klein averred that he received no notice of that meeting, and the secretary of the corporation, under whose direction the notices of the meeting were sent, declined to state definitely

that notice had been mailed to Klein, although he stated that he "believed" such notice to have been mailed.

The notice of the meeting sent out by the secretary contained no information that a change in the by-laws was to be proposed and, according to the president, the only information given to any stockholders of the proposed change in the by-laws was the announcement made at the previous annual meeting (January 28, 1938), and such oral notice as he personally gave to "about ten" of the shareholders from whom he solicited proxies for the meeting, although he could name only four in his testimony.

At the stockholders' meeting on January 27, 1939, the plaintiffs protested against the resolution seeking to amend the by-laws, but in spite of the protest, the resolution was declared adopted.

No stock vote was taken on the adoption of the resolution, the president calling for a voice vote, and no ballots were cast upon the adoption or rejection of the proposed amendment to the by-laws.

After the adoption of the resolution, seven directors were nominated, their terms of office to correspond to the tenures established by the purported amendment to the by-laws previously declared adopted by the president. The plaintiffs objected to the legality of the proceedings, but were overruled by the president, and the directors, having been nominated, were declared elected by the president.

Thereupon, the bill in equity was filed, praying that the actions taken at the meeting of stockholders on January 27, 1939, be declared invalid, and that the officers of the defendant corporation be directed to permit the plaintiffs to examine the books and records of the corporation and to make a copy of the list of shareholders for the solicitation of proxies.

The ordinary remedy with reference to examination of the books would be by mandamus rather than by bill in equity, but in view of the relief sought to have the

amendment to the by-laws declared illegal and void, and there being no substantial dispute as to the facts, equity jurisdiction attached to all the matters embraced within the bill. No question was raised in the court below, nor in this appeal, as to the propriety of the remedy for the relief sought in this proceeding.

(1) As to examination of the books and stock-ledgers: The right of a shareholder in a trading corporation to examine the corporate books and records for a proper purpose has been recognized in Pennsylvania since the decision of the Supreme Court in the case of *Commonwealth ex rel. Sellers v. Phoenix Iron Co.*, 105 Pa. 111. In that case, it was held, at p. 116, that: "Unless the charter provides otherwise, a shareholder in a trading corporation has the right to inspect its books and papers and to take minutes from them, for a definite and proper purpose, at reasonable times. The doctrine of the law is, that the books and papers of the corporation, though of necessity kept in some one hand, are the common property of all the stockholders." As to the right of a shareholder to make excerpts from the records of a corporation, the same case, when it came before the Supreme Court again, as reported in 113 Pa. 563, 6 A. 75, held at pp. 572, 573: "Under the circumstances mentioned, and for the purposes stated, we are of the opinion that according to our ruling when the case was here before, the relator is clearly entitled to an examination of the books and papers of the company. Such a right is of course not to be exercised to gratify curiosity, or for speculative purposes, but in good faith and for a specific, honest purpose, and where there is a particular matter in dispute, involving and affecting seriously the rights of the relator as a stockholder. ...... A stockholder in a trading corporation must certainly have some rights which a board of directors should respect. Sellers (the relator) was not bound to accept the mere statement of the board, whether under oath or otherwise, as to the contents of the books, etc. *He had a right to a reason-*

*able personal inspection of them, and with the aid of a disinterested expert might make such extracts as were reasonably required in the preparation of the bill he purposed to bring."* (Italics supplied).

The plaintiffs contend that the purpose of ascertaining whether the business of the corporation has been properly conducted, and for the purpose of soliciting proxies for use at the shareholders' meeting, is sufficient to justify an examination of the defendant corporation's books of account. This purpose has been upheld as a proper one in Pennsylvania for so many years that it is settled beyond question: *Hodder v. George Hogg Co.,* 223 Pa. 196, 72 A. 553; *Hauser v. York Water Co.,* 278 Pa. 387, 123 A. 330; *Taylor, Trustee v. Eden Cemetery Co. et al.,* 337 Pa. 203, 10 A. 2d 573.

The court below has withheld the privilege of examination of the books on one ground alone, that the plaintiffs are motivated by "some speculative purpose." The court states in its opinion that: "The plaintiffs at no time ...... have set forth any complaint or averment of mismanagement, wrongdoing, unlawful activity or any violation of any law or sound principle of management."

It is not necessary for a stockholder to aver mismanagement or fraud to obtain his right to inspect corporate records. There is no evidence to sustain a finding that the examination of the books was sought for speculative purposes, rather than for the reasons averred in the bill. The decision of the Supreme Court in *Hauser v. York Water Co.,* supra, states clearly that where a relator's object in requiring a list of his fellow-stockholders is to enable him to communicate with them regarding the election of other officers than those then serving, he need not aver mismanagement, or state why he desires the change to be made. The case of *Hodder v. George Hogg Co.,* supra, goes even farther and establishes the right to inspect corporate records in a stockholder "even though his only object is to ascertain whether the business has been properly conducted."

Quoting from *Hauser v. York Water Co.,* supra, p. 392, Mr. Justice SIMPSON, speaking for the Supreme Court says: "It follows that when a stockholder applies for a mandamus, because of a refusal to give him such a list, or to allow him to copy it from the books of the corporation, and states a legal and proper reason why he desires to have it, the corporate officers, who deny his right to it, have a heavy burden to carry. Of course, 'the writ should not be granted for speculative purposes, or to gratify idle curiosity, or to aid a blackmailer, but it may not be denied to a stockholder who seeks the information for legitimate purposes': *Guthrie v. Harkness,* 199 U. S. 148. The law presumes, however, that the list is desired for a proper purpose, and he who denies this has the burden of clearly and explicitly averring and proving that he is right: 7 R.C.L. 326."

The court below further says in its opinion: "If they (complainants) are dissatisfied with the general policy of the company, they have a perfect right to change it if they can by securing the support of sufficient stockholders to elect another group of directors or administrative officials."

While recognizing the right to effect a change of policy, the court, nevertheless, deprives them of the means by which such change can be effected.

In the recent case of *Taylor, Trustee, v. Eden Cemetery Co.,* supra, the Supreme Court, in an exhaustive opinion by Mr. Justice DREW, reaffirms, in strong language, the principle hereinbefore referred to, as follows: "In *Hodder v. George Hogg Co.,* 223 Pa. 196, 198, we said: 'Relator as a stockholder has without question the right to inspect the books of the company, at a proper time, and in a proper way, even though his only object be to ascertain whether the business has been properly conducted. Such a right is necessary for the protection of stockholders.' The books and papers of a corporation are the common property of all the stockholders: *Kuh-*

*bach v. Irving Cut Glass Co.,* 220 Pa. 427."

The assignment of error in relation to the refusal to afford complainants the right sought, must be sustained.

(2) As to the attempted amendment of the by-laws: Under Article X, Section 1 of the corporation's by-laws it is provided that the by-laws shall not be amended except at a stockholders' meeting specially called for that purpose, or at a regular meeting subsequent to the meeting at which notice shall be given of the intention to make such alteration or amendment. Since the by-laws provide that regular meetings shall be held only annually, it becomes obvious that the provision here stipulates that notice of intention to amend can be given at one annual meeting and the amendment can be presented a year later.

The first intimation that Article III, Section 1, of the by-laws was to be amended was given at a meeting of the stockholders on January 28, 1938, at which meeting there were present seventeen stockholders in person, including two of the plaintiffs. The stockholders present represented 10,508½ shares. The president of the corporation and one other director, who died during 1938, represented 9,381 shares by proxy. It should be borne in mind that there are 34,000 shares outstanding and approximately 2300 shareholders of the corporation. At the meeting on January 28, 1938, the announcement of reference of the proposed change to counsel was made.

Between that time and the stockholders' meeting held on January 27, 1939, at which the amendment was proposed for final enactment, *no other notice was given to the shareholders, except to the ten shareholders who were advised by the president of the corporation when he solicited their proxies for the 1939 meeting,* although when asked whom he had notified of the proposed change, he could name only four shareholders.

The secretary of the corporation testified that the

*call for the meeting contained no notice of the proposed amendment,* and granting that a total of 19,889½ shares were represented either personally or by proxy at the 1938 meeting, there still remained shareholders holding 14,110½ shares of the corporation's stock who had absolutely no knowledge of the proposed change. *There is in the record, no evidence to show that any of the other stockholders who were represented by proxy at the 1938 meeting, other than the few named by the president, were advised of the impending change.*

Until the amendment was purportedly adopted in 1939, the board consisted of a minimum of seven and a maximum of fifteen, and in 1938, there were actually eight members elected. The proposed amendment provided that the directors should be divided into four classes, two to be elected for four years, two to be elected for three years, two for two years, and one or more for one year.

The importance of proper notice to the stockholders of any proposed amendment is clearly and forcibly set forth in the case of *Bagley v. Reno Oil Co.*, 201 Pa. 78, 80, 50 A. 760, from which we quote: "The by-laws of a corporation are the rule of its life. It comes into being through some general or special statute, with its charter as the evidence of its existence, and one of its necessary and inseparable incidents is the power to make by-laws which become its private statutes for its own government, unless contrary to the laws of the land: 1 Blackstone, 476; 2 Kent, 278. By its by-laws the management of a corporation's affairs is regulated and most frequently, as in the present case, its directors or managers are chosen in accordance with their provisions. They are adopted in the first instance by the members of the association, at a meeting where, if all do not attend, all must, at least, have an opportunity to be present, and when adopted, they become as binding upon every member as the charter itself, into which they are written as the association's rule of conduct.

...... By-laws, having once been adopted, become the permanent rule to govern the association's conduct, and every member of it ought to be able to so regard them, and to feel that they will be neither repealed nor amended without notice to him of an intention to do so, even at a regular or annual meeting of the stockholders. Upon the by-laws, as adopted and regulating the affairs of a corporation in which a stockholder has invested his money, he relies for a management as therein provided, and it is not reasonable that even at a regular or annual meeting, radical changes should be made, without notice to him of such contemplated action. By experience and observation, we know that, at these regular annual meetings, only the general routine of business is transacted, and the corporation passes from one year of its existence into the next, with the by-laws regulating the number of its directors and its general management unchanged. A majority of stockholders rarely attend in person. Their proxies are given to attorneys to vote for them on the usual and ordinary questions and matters that arise. If one or more stockholders contemplate action of an unusual or extraordinary character, it is but reasonable that their associates should have notice that radical, and, what may prove disastrous changes, are contemplated, and that an effort will be made to effect them. If such changes are made with the approval of a majority of the stockholders *upon notice to all,* they affect and bind all; but they should not be made until all have had an opportunity to be heard by receiving notice of what changes will be attempted, unless provision be made for them in the by-laws; Cook on Stock and Stockholders and Corporation Law (2d ed.), sec. 595." (Italics supplied).

Our attention has been called to the Insurance Act of 1921, May 17, P. L. 682, which provides, under Section 313 of Article III as follows: "Whenever a stock vote is duly demanded *or required* on any subject submitted to the stockholders of any stock insurance com-

pany of this Commonwealth for their action at any annual or special meeting, such vote may be taken at and certified to such meeting, or any adjournment thereof; or, if the annual election for directors shall, under provisions of the charter or laws governing such company, be held at a time which shall be within thirty days after the annual or special meeting at which such subject shall be submitted to the stockholders, then the vote on such subject may be taken at the same time and place, by the same persons, *and in the same manner as the vote for directors of such company shall be taken;* or, if, under provisions of the charter or laws governing such company, the annual election for directors thereof shall not be held at a time which shall be within thirty (30) days after the meeting at which such subject shall be submitted to the stockholders, then the stock vote upon such subject may be taken at any time within thirty (30) days after such meeting by three judges to be appointed, and at a time and place to be designated by the stockholders at said meeting. The result of the vote shall be certified by the judges under oath or affirmation, and their certificates shall be filed with the secretary of such company." (Italics supplied).

Whether we consider the Act of 1921 as applicable, or apply the general principles governing amendments to by-laws as stated supra, we are of the opinion that no adequate notice was given to the general body of stockholders, to warrant the adoption of the proposed amendment, which would effect a most radical change in the law governing the management of the company. The notice of a proposed amendment to the by-laws given at the annual meeting in 1938 undertook to advise the stockholders only that it was proposed to change the tenure of the directors without saying how and in what manner. The resolution adopted in 1939 undertook to make a more radical change by dividing the directors to be elected into classes. The effect of this was to place it in the power of a less number of

shares to choose every director and thus to reduce the representation of a minority of the shares. The notice given was not broad enough to support such a change. It would be most inequitable to permit the officers of a corporation to perpetuate themselves in office through an amendment of which insufficient notice was given. The assignment of error in relation thereto must therefore be sustained.

We are of the opinion that the amendment to the by-laws having been illegally adopted and therefore invalid and void, directors elected thereunder were illegally elected and their election is invalid and illegal.

We feel that complainants are entitled to an examination of the books and stock-ledgers of the company, but that the same should be done without undue interference with the operation of its business.

The decree of the court below is reversed, the bill is reinstated, and the record is remitted to the court below with directions to enter the proper order granting the relief prayed for under such conditions as the court may deem proper. Costs to be paid by appellee.