163 So.2d 189 (1964)
Lucille Marie PERRIN, Widow and Surviving Spouse in Community of Joseph E. BLUM, Joseph E. Blum, Jr., M.D., Robert U. Blum, Individually and as Executors of the Succession of Joseph E. Blum,
v.
Shepard M. LATTER, Anna Shushan, widow of Harry Latter, Individually and as Executors of the Succession of Harry Latter, Shirley Latter, Widow of Lee Schlesinger, the Milton H. Latter Educational and Charitable Foundation, and Latter & Blum, Inc.
No. 1300.
Court of Appeal of Louisiana, Fourth Circuit.
March 2, 1964.
Rehearing Denied May 4, 1964.
*190 Lemle & Kelleher, Harry B. Kelleher, New Orleans, for defendants-appellants.
Charles F. Seemann, New Orleans, for Robert U. Blum and others.
Robert U. Blum, in pro. per., New Orleans, Blum & Sotile, Donaldsonville, *191 Joseph A. Loret, Baton Rouge, for plaintiffs-appellees.
Before YARRUT, SAMUEL and TURNER, JJ.
HENRY F. TURNER, Judge pro tem.
Plaintiffs, the minority shareholders of Latter & Blum, Inc., a Louisiana corporation, brought this action against the corporation and the persons holding the majority of the outstanding shares thereof. The plaintiffs are the surviving spouse in community, the heirs, and the testamentary executors of the Succession of the late Joseph E. Blum. The defendants are the surviving spouse in community, the heirs and legatees, and the executors of the Succession of the late Harry Latter. The deceased were two of the four original stockholders of the firm of Latter & Blum, Inc., and at the death of Harry Latter on October 4, 1961, they together owned all of the stock of the corporation, except that which they had donated to certain charitable foundations created and controlled by them.
The plaintiffs alleged an obligation on the part of the defendants to sell to them all of the stock of the corporation owned by Harry Latter at his death, separate claims for the restitution of fifteen certain shares of the stock held by defendants and allegedly owned by plaintiffs, for the restitution of forty other shares held by defendants, and allegedly due plaintiffs, and for recognition of their interest in five other shares held by defendants. The complaint also alleged a partnership agreement by Joseph E. Blum and Harry Latter pursuant to which the corporation was formed and operated and which provided for their respective ownership interest in the business. The plaintiffs further alleged the invalidity of a special meeting of the stockholders, held on November 14, 1962, and prayed for injunctive relief against any action by the defendants pursuant to resolutions passed at this meeting.
The District Court, after trial on the merits, rendered judgment against the plaintiffs on all of their claims to stock in the corporation held by defendants, except that for a fractional interest in a certain five shares. The Court held the resolutions passed at the special meeting of the shareholders invalid and granted a permanent injunction against any action by defendants pursuant to these resolutions. From that part of the judgment refusing the relief prayed for by the plaintiffs, they answered the appeal and assigned eight specifications of error by the District Judge. From this decision granting the injunction the defendants took this appeal.
The District Judge actually signed three judgments in this case. Following the hearing on the preliminary injunction, he signed a judgment prohibiting defendants from serving as directors of Latter & Blum, Inc. and from performing any act authorized by the purported amendment to the charter as a result of the purported shareholders' and directors' meeting of November 14, 1962. Two days later, he signed an amended judgment which changed the former judgment in that it ordered that a preliminary writ of injunction issue. On June 28, 1963, he signed a judgment granting a permanent injunction against the defendants.
The plaintiffs had attacked the validity of the special meeting of the stockholders on the grounds that:
"(a) the notice of the meeting was defective in that it did not adequately state the objects and purposes of the meeting and the proposed corporate action to be taken at said meeting;
"(b) the notice of the meeting was addressed to the late Joseph E. Blum on October 29, 1962, notwithstanding the fact that he had died on October 15, 1962;
"(c) the Latters had improperly voted 1741/3 shares of stock of Latter & Blum, Inc., in favor of a proposed amendment to the charter of Latter & *192 Blum, Inc., the ownership of which was claimed by plaintiffs;
"(d) the Latter interests had improperly voted the stock of Latter & Blum, Inc. claimed by them;
"(e) the minutes of the special meeting of the shareholders on November 14, 1962 stated that the Latters had voted in favor of the amendment to the corporate charter all of the stock they were entitled to vote instead of attributing to Shepard M. Latter and Anna S. Latter a specific number of shares they were respectively voting in each instance in their individual and representative capacities in favor of the amendment to the charter of Latter & Blum, Inc."
The decision of the District Court holding invalid the resolutions passed at the stockholders meeting was based on LSA-R.S. 12:42 and the provisions of the corporate charter of Latter & Blum, Inc. The allegedly invalid action was an amendment to the charter of the corporation abolishing the requirement that the directors of the corporation be stockholders, and the election of directors pursuant to the provisions of the amended charter.
LSA-R.S. 12:42 provides that an amendment of the articles of incorporation may be adopted by a vote of the holders of two-thirds of the voting power of all shareholders entitled under the articles to vote, or by such larger or smaller vote as the articles may require. The charter of Latter & Blum, Inc. made no provision for its amendment; therefore, the statutory requirement is controlling in this instance.
The controversy regarding the attempted amendment of the articles turns in part on the ownership of five shares of the outstanding stock of the corporation, for without it the defendants herein did not possess the requisite two-thirds stock to effect the amendment. The stock in question had formerly been registered on the books of the corporation in the name of one A. J. Block, a former employee of the corporation, and the certificate representing these five shares, signed in blank by Block, was found among the effects of the late Harry Latter after his death. Pursuant to a judgment of possession rendered in the Succession of Harry Latter, the late Joseph E. Blum had ordered all the stock standing in the name of Harry Latter, including these five shares, transferred on the books of the corporation to the persons named in the succession proceeding.
The plaintiffs attacked the transfer of these five shares as being in violation of LSA-R.S. 12:32 and Article X of the articles of incorporation of Latter & Blum, Inc. LSA-R.S. 12:32 provides that shareholders of record are entitled to vote the shares so registered in accordance with the voting rights granted by the corporate charter. Article X of the charter of Latter & Blum, Inc. provides:
"The stock of this corporation may be transferred only on the books of the corporation, and subject to such regulations and formalities as may be prescribed from time to time by the Board of Directors. No stockholder shall be permitted to sell or otherwise dispose of his stock, without first offering the same in writing to the other stockholders, as hereinafter set forth, at a price not exceeding the book value thereof, which value shall be determined by audit, made as of the date of said offer. The stockholders, to whom such offer shall have been made, shall have an option and first right to purchase for cash all of the shares of stock to be thus disposed of, which option shall remain in force and effect for a period of twenty, (20), days."
Defendants, conceding the binding force of this article, nevertheless contend that it is not applicable to the transfer in question, because A. J. Block was never the real owner of this stock, and it had been placed in his name for the convenience of the other stockholders. The Trial Judge ruled that *193 the stock could not be transferred on the books of the corporation except in compliance with the provisions of Article X, and, therefore, the defendants had no right to vote this stock at the meeting.
There can be no doubt that if the transfer in question was in violation of the statutory and charter provisions cited above, the defendants had no right to vote those shares and the attempted amendment of the corporate charter and any action pursuant thereto was invalid. The evidence adduced at the trial indicated that the five shares in question were acquired by Harry Latter with ninety-five other shares of stock in the corporation from a Mr. Waguespack on February 15, 1937, coincident with Waguespack's retirement from the firm. At the time of this transaction, stock Certificate No. 3 for five shares, registered in Waguespack's name, was cancelled and Certificate No. 22 for five shares was issued in lieu of Certificate No. 3, in the name of a Miss Mayer, who was then in the employ of Latter & Blum, on the premise that she would serve as Secretary of the corporation. Miss Mayer subsequently left the firm's employ, and about two years later Certificate No. 22 was cancelled, and in its place Certificate No. 23 was issued in the name of A. J. Block for five shares of the capital stock of Latter & Blum, and it was this certificate that was found, endorsed by A. J. Block, in the effects of Harry Latter. A Miss Kent, who was apparently the de facto Secretary of the corporation, testified that Mr. Blum, when he received the judgment of possession and certificate for the stock, gave them to her with instructions to issue new certificates in accordance with the judgment of possession. This she did approximately one month later. Evidence was also introduced showing that the deceased owners of the corporation, at all times subsequent to the retirement of Mr. Waguespack, considered themselves the sole owners of the corporation in the proportion of two-thirds in Harry Latter and one-third in Joseph Blum. It is not contested that they were the only persons to receive dividends during this period and that these dividends were always paid according to this percentage. A. J. Block never received the dividends to which he would have been entitled as the owner of the five shares of stock.
We think the record conclusively shows that the five shares of stock in question were the property of Harry Latter and that he had acquired the ownership thereof from F. Poche Waguespack in 1937, never thereafter divesting himself of it. The transfers of this stock on the books of the corporation in the intervening years we find to be mere simulated transactions for the purpose of qualifying the holders thereof as officers and directors of the corporation. The record of dividend payment by the corporation and the acts of the shareholders in relation to corporate affairs, in the absence of any evidence to the contrary, leads only to this conclusion. As A. J. Block was never the real owner of the stock and it was in reality always the property of Harry Latter, the transfer in question was not in violation of the articles of incorporation. State ex rel. Cabral v. Strudwick Funeral Home, Inc., La.App., 4 So.2d 760. No sale and purchase was involved, and there was only a simulated transfer to which the charter provision was never intended to apply. Harry Latter, during his lifetime, and the defendants later, had a right to have the record ownership of these shares changed to reflect the true situation.
The plaintiffs have also attacked the validity of any action taken at this stockholders' meeting on the grounds that there was insufficient notice given. The written notice of the meeting recited that it was: "for the purpose of considering any and all matters relative to its affairs, including, but without limitation, thereby, the following:
"(1) The advisability of amending the articles of incorporation so as to eliminate the requirement that directors be shareholders, and so as to increase the number of directors to six (6).

*194 "(2) The advisability of liquidation; and
"(3) The advisability of the sale of the corporation."
The action taken at the meeting was: the passing of a resolution adopting the charter amendment discussed above, the passing of a resolution adopting a by-law providing that all directors need not be present or represented by proxy in order to constitute a quorum, and also the election of new directors of the corporation.
The meeting of November 14, 1962, was a special meeting of the shareholders of the corporation. The articles of incorporation make no provision for special meetings of the stockholders. LSA-R.S. 12:30 provides in part:
"D. Unless otherwise provided in the articles or by-laws, the authorized person or persons calling a shareholders' meeting shall cause written notice of the time, place, and purpose of the meeting to be given all shareholders entitled to vote at such meeting, * * *. If such written notice is placed in the United States mail, postage prepaid, and addressed to a shareholder at his last known address, notice shall be deemed to have been given him." (Italics ours)
There can be no question that the notice given was sufficient as to the amendment of the articles of incorporation.
We think the notice given, taken in conjunction with the fact that there were at that time no elected directors of the corporation, and actual knowledge which plaintiffs had of the defendants' intention to elect directors, also constituted sufficient notice of the election of directors, and that that election was, therefore, valid.
As there was nothing in the notice of the meeting which related to the by-law adopted, the resolution adopting it is not valid. Where, as here, the statutory requirement for the giving of notice of the nature of business to be transacted at a special meeting is not followed, the courts will declare its invalidity at the instance of the stockholderJones v. Shreveport Lodge No. 122, B.P.O.E., 221 La. 968, 60 So.2d 889. While the notice need not specify with exactness the business to be transacted, it must be such as would advise a reasonably alert stockholder of the nature of the business to be considered. As the notice given was insufficient to so advise plaintiffs of the by-law enacted, that by-law must be held invalid. But, as the plaintiffs have failed to show any danger of irreparable injury, the injunctive relief prayed is not here appropriate.
Plaintiffs contend that the failure to send the notice of the meeting to them renders the meeting invalid. Notice of a special meeting of the shareholders need only be sent to stockholders of record at their record address. As there had been no change in the record ownership of the stock formerly owned by Joseph Blum as of the time of the notice, the mailing of it to him at his record address was sufficient. A corporation is entitled to rely on its records as to ownership of its stock.
We do not find any impropriety or violation of legal procedure, as plaintiffs have argued, in the recitation in the minutes of the meeting that two named stockholders voted "all of the stock they were entitled to vote" in favor of the resolutions. The total number of shares they were together entitled to vote has been determined to have been over the two-thirds of the total outstanding stock requisite for the action taken and, therefore, sufficient to pass the resolutions in question and elect directors. We can see no injury to plaintiffs in the failure to attribute the amount each of these two stockholders individually claimed. While there may be instances in which such a determination would be necessary, *195 this is not one of them. Their allegations of this fact state no cause of action.
The plaintiff's claim that they are entitled to acquire the stock of the corporation, which was owned by Harry Latter at the time of his death, by virtue of a partnership agreement entered into between Harry Latter and Joseph E. Blum on January 1, 1925. This agreement gave the surviving partner an option for one year after the death of the other to buy all the assets of the partnership. It is the contention of the plaintiffs that all of the stock of Latter & Blum, Inc. was an asset of the partnership and that plaintiffs, therefore, had an option to purchase it after the death of Harry Latter.
The District Court denied this claim and in its Reasons for Judgment said:
"The Court finds that there is absolutely no evidence whatsoever in the record which would in any way substantiate the claim made by the attorney for the Blum interests." (plaintiffs) "On the contrary, the Court finds from the evidence that both Mr. Harry Latter and Mr. Joseph E. Blum, during their lifetimes, were particularly interested in the designation and ownership of the stock of Latter & Blum, Inc., and that they were meticulous in naming the owners of that stock. * * *"
With this finding we fully agree. Latter & Blum, Inc. was organized in 1931, some six years after the partnership agreement in question. There were four incorporators and four shareholders at that time, and there is absolutely nothing in the record which indicates that any of the stock in the corporation was ever owned by the partnership formed in 1925. Dividends on the corporate stock were always paid to the record owners thereof according to the corporate records, except the A. J. Block certificate previously discussed.
The plaintiffs sought a subpoena duces tecum of all records of business activities carried on by Harry Latter and Joseph E. Blum from 1916 to the date of the death of Joseph Blum. It is their contention that these records would have shown the existence of the partnership and its ownership of various corporations formed by the deceaseds over the years. The District Court denied the subpoena, and we think properly so. Many of the records of these business activities were introduced in evidence in the Court below. As stated above, they clearly show that the corporation was not operated as an asset of the partnership. The fishing expedition which the plaintiffs were attempting would have put the defendants to great expense and could not conceivably have served a useful purpose.
The plaintiffs claim a right to purchase the stock of the corporation owned by Harry Latter at the time of his death, by the terms of a contract entered into by Joseph E. Blum and Harry Latter on January 24, 1931. This contract provides in part:
"NOW, THEREFORE, IT IS AGREED that, in the event any party to this contract shall die, the remaining parties are hereby given an irrevocable option for the period of ninety, (90), days from the date of death of the party dying, to purchase the stock of the deceased party, proportionately to the stockholding of the surviving parties to this agreement, at book value, payable in cash, plus a bonus equivalent to twice the book value of said stock, which bonus shall be payable in cash in five (5), equal, yearly installments, beginning one, (1), year from the date of death. This bonus, in the case of the death of the party of the third part, F. P. Poche Waguespack, shall not be applicable until the expiration of December 31st, 1933. In the event the option to purchase is not accepted by the surviving party or parties to this contract before the expiration of the ninety, (90), day option, then the executor, heirs or legatees of the deceased, who hold or inherit *196 decedent's stock, are hereby given an irrevocable option for ninety, (90), days from the expiration of the option given to the surviving parties to this contract, to purchase the stock of the surviving parties under the same terms and conditions."
Harry Latter died on October 4, 1961. Joseph E. Blum lived until October 15, 1962 and never during the intervening year exercised this option. It is the contention of the plaintiffs that the stock of Harry Latter had by his will been put beyond the power of the executors of his succession to transfer to them. They have cited numerous authorities to the effect that where a party to a contract, whose obligation is to deliver a specific thing, puts it beyond his power to deliver within the stipulated time, then the exercise by the other party of his option to purchase that thing within the stipulated time has been prevented, and the latter is entitled to a reasonable time for action.
We agree with the Trial Court that this proposition is inapplicable to the facts of this case.
The last sentence of the quoted provision of the contract in question, clearly indicates that such option was operative as to stock which would otherwise pass to either heirs or legatees of the deceased. It gives "the executor, heirs or legatees of the deceased, who hold or inherit decedent's stock," an option on the stock of the surviving party or parties' stock in the corporation, if the latter should fail to exercise their option within the specified time. This sentence is inconsistent with the position of plaintiffs, that the donation mortis causa of the stock by Harry Latter, extends the period during which the surviving party to the contract might exercise his option. The option given by the contract ran against the stock, in whomever's hands it might be found within the ninety-day period, and Joseph Blum lost that option at the lapse of this period.
Plaintiffs have also contended that a donation by the surviving spouse of Harry Latter of thirty-five shares of the stock to which she was entitled from the community, put this stock beyond her power to deliver to Joseph Blum, should he have exercised his option. His failure to exercise the option as to the remaining stock, indicates that it was not his intention to exercise the option as to any of it. In any event, Joseph Blum could have prevented the effective transfer by Mrs. Latter of those thirty-five shares under the provisions of Article X of the corporate charter, which is quoted above. That article prevents a transfer by any shareholder of his stock, without the consent of all other shareholders. As that consent was never obtained by Mrs. Latter, the stock was never effectively placed beyond the power of Joseph Blum. In accordance with these views, we must affirm the decision of the Trial Court that the option which Joseph Blum had on the stock of Harry Latter was lost by lapse of ninety days without any action on his part.
A further paragraph of the contract of January 24, 1931, provides:
"In the event the surviving parties have failed to avail themselves of the option herein granted, and the executor, heirs, or legatees of the deceased have failed to avail themselves of the option herein granted, within the time herein specified, then, in that event, upon the expiration of one hundred and eighty, (180), days from the date of death, the parties to this agreement bind and obligate themselves to liquidate the corporation, provided the stock held shall be sufficient to institute liquidation proceedings, and in the event the stock so held is not sufficient to institute liquidation proceedings, then they bind and obligate themselves to join, if called upon to do so, in the liquidation of the corporation. In the event any of the surviving parties, or the heirs and legatees of any deceased *197 party, should refuse, on the expiration of the period of one hundred and eighty, (180), days, hereinabove specified, to join in the liquidation of the corporation, and if the options herein granted have not been accepted, then, in that event, it shall be construed as an acceptance of the option to purchase by the party or parties refusing to proceed or to assist in the liquidation of the corporation, and the party or parties so refusing shall be bound and obligated to purchase the stock of the deceased, or other parties to this contract, who are willing to proceed with the liquidation, as would be allotted to him proportionate to his stockholdings, under the same terms and conditions as herein specified."
Shepard Latter, one of the defendants, at an informal meeting of various stockholders suggested that it might be desirable to liquidate the corporation. A letter to the effect that a formal stockholders' meeting was to be called for the purpose of considering liquidation was sent to the agent of Joseph Blum.
It is the contention of plaintiffs that this constituted a commencement of liquidation proceedings, that the liquidation was prevented by the refusal of plaintiffs to go through with it, and that these facts resulted in an obligation on the part of defendants to sell to plaintiffs their stock, under the last quoted provision of the contract of January 24, 1931. The contention is without merit. This provision of that contract creates an obligation on the part of the party refusing to join in a liquidation, to purchase the stock of those who wish to liquidate. Its terms do not provide for any obligation on the part of the party desiring liquidation to sell.
The Trial Court found: "* * * that there was no institution of liquidation proceedings; that even if there were institution of liquidation proceedings, that the right would be with the person who wanted to liquidate to require the other person who refused to liquidate to buy the stock of the person who wanted to liquidate and the person who refused to liquidate would be obligated to buy the stock, but the person who refused to liquidate did not, by that fact, obtain an option to buy the stock.
"In other words, it created an obligation, but not an option."
With this finding, we are in accord. The purpose of this provision of the contract was to enable a surviving stockholder who should so desire to withdraw from the corporation the investment represented by the stock he held. Alternative methods for doing so are provided. He may liquidate the corporation if he holds sufficient stock to do so or if the other stockholders also desire liquidation, or, if other stockholders are able to block the liquidation, he may force them to buy his stock. But a stockholder cannot be forced to sell his stock when an attempted liquidation is blocked. If he prefers to retain his investment, to taking the price provided in the option provision of the contract, he may do so. It is apparent that the assets of Latter & Blum, Inc. make the outstanding stock worth more than the price provided for in this option provision, and that liquidation would be the only means by which any of the stockholders could realize their proportionate share of these corporate assets.
The last clause of the contract under consideration here provides that: "It is the intention of the parties to this contract that no party, or his heirs or legatees, shall retain stock in this corporation in the case of death or disassociation, unless the remaining stockholders shall decline to purchase said stock."
This clause merely states the obvious intent of the parties as disclosed in the preceding clauses of the contract. It contains no new provision for an option by continuing beyond the period specifically provided in the option clause, and this Court may not read such a provision into it.
The contract we have considered provides certain means by which the stockholders *198 of Latter & Blum, Inc., agreed that they could buy out the stock of any of them who either became disassociated from the corporation, or who died. As Joseph E. Blum failed to avail himself of any of these means within the stipulated period after Harry Latter's death, he must be held to have lost his rights under the contract.
Joseph Blum had lent Harry Latter forty shares of his stock in the corporation on or about April 11, 1934. The plaintiffs assert that this stock was never returned and now seek its restitution.
The Trial Court found that these forty shares of stock were returned by Harry Latter on February 15, 1937, from one hundred shares of stock which he had purchased from a shareholder who disassociated himself from the firm. This purchase by Harry Latter was agreed to by Joseph Blum in a signed and written contract dated December 29, 1936.
We agree with the Trial Court that the apparently gratuitous transfer of forty shares of stock, the record of dividend payments by the corporation, and the passage of almost thirty years with no further stock transactions between the parties, all indicate that the loan of the stock was repaid. During all these years, the corporation and its stockholders had prospered. Harry Latter, who was the majority stockholder, could very easily have returned this stock during those years, if it had been still owing.
The plaintiffs also assert a claim to fifteen shares of the stock of defendants in Latter & Blum, Inc. by virtue of an agreement dated January 2, 1934, by the terms of which Harry Latter agreed to sell and deliver to Joseph Blum fifteen shares of stock. The purpose of that agreement was to provide for the ownership of the corporation by the parties at certain stated percentages. It was recited that the sale and delivery were to take place four years from the date of the agreement because Harry Latter did not, at that time, have the stock available for transfer.
The Trial Judge found, as do we, that this agreement was abrogated by another, dated November 20, 1936. The later agreement provided that Harry Latter was to buy out the one hundred shares of stock of a retiring member of the firm, and Joseph Blum assented to this purchase. It was out of the stock so purchased that Harry Latter repaid the loan of forty shares of stock lent him by Joseph Blum. One of the purposes of this later agreement and the stock transactions growing out of it, was to set a new proportion of stockholding in the corporation by the parties. Whereas under the old agreement Harry Latter was to own fifty percent of the stock, Joseph Blum twenty-five percent, and a third party the other twenty-five percent, the new agreement contemplated ownership by Harry Latter and Joseph Blum in the proportion of two-thirds and one-third, respectively. We agree with the Court below that the later contract, taken in conjunction with the inactivity of the parties over the many years when they were able, if they had wished, to perform the first contract, indicate their intent to abrogate and replace the first contract with the later one.
The plaintiffs assert a claim to thirty-five shares of stock in the corporation, by virtue of an attempted donation of this stock by the widow of Harry Latter. She acquired the stock as surviving spouse in community. Plaintiffs contend that the provisions of Article X of the corporate charter, quoted above, have the effect of creating an option in the other stockholders when a transfer is attempted in violation of its provision. This contention also is without merit. While such a transfer may be prevented, the transferor does not thereby make an offer to other stockholders. He has the choice of retaining it in his own name or first offering it to the other stockholders. But his attempted disposition does not automatically create the offer to other stockholders.
The judgments of the District Court in effect held that the amendment to the articles of incorporation of Latter & Blum, Inc. and the election of directors at the meeting *199 held on November 14, 1962 was illegal and invalid, and in this connection a permanent injunction was granted against the defendants enjoining them from taking any action from said amendments to the charter. We think the Trial Court was in error, and this judgment is, therefore, reversed.
The judgment granting the permanent injunction would appear to include the resolution adopting a new by-law for the corporation, and in that respect, the judgment is affirmed. That part of the judgment is, thus, amended, and in all other respects the judgment is affirmed, costs to be paid by the appellees.
Reversed in part, amended and affirmed in part.