Joe VOGLER and B.B.P. Corporation,
Appellants,

v.

FAIRBANKS NORTH STAR
BOROUGH, Appellee.

No. 5304.

Supreme Court of Alaska.

Oct. 23, 1981.

C. R. Kennelly, Kennelly, Azar & Donohue, Fairbanks, for appellants.

Terrence H. Thorgaard, Asst. Borough Atty., and J. D. Nordale, Borough Atty., Fairbanks, for appellee.

Before RABINOWITZ, C. J., CONNOR, MATTHEWS and COMPTON, JJ., and DIMOND, Senior Justice.*

OPINION

DIMOND, Senior Justice.

Joe Vogler is the president of B.B.P. Corporation. The Fairbanks North Star Borough filed a complaint against Vogler and the corporation (hereafter Vogler) in December, 1979, for allegedly selling two of the three lots in the proposed Fifth Addition to the University Heights Subdivision without obtaining final plat approval for the addition. The only obstacle to final approval was Vogler's stubborn refusal to comply with a borough ordinance concerning the gravel he had used to construct a road in the Fifth Addition.[1]

The borough's complaint also alleged that Vogler had "upon multiple occasions in the past effected the transfer of land within subdivisions before respective plats thereof [had] been approved and recorded," and that he had "stated that he fully intend[ed] to convey other lots without prior approval by the Fairbanks North Star Borough Planning Commission."

---

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. The plat had been disapproved because the gravel used to construct the road was not of the type required by a borough ordinance. The ordinance provided that when nonconforming gravel was used an independent laboratory had to perform durability tests on the gravel, at the subdivider's expense, before the borough engineer could approve its use. FNSB 17.08.115. Vogler refused to have the test done, claiming that the road in question was "far superior to any of the roads contained within the North Star Borough itself." Vogler contends on this appeal that FNSB 17.08.115 is vague and invalid. We disagree. This ordinance is valid, and Vogler's argument to the contrary is devoid of merit.

Pursuant to AS 29.33.190(a),[2] the borough requested a permanent injunction against Vogler to prevent any sales of lots in unapproved subdivisions. The borough also moved for a temporary injunction against the sale of the remaining lot in the Fifth Addition pending the outcome of the suit.

In his answer, Vogler admitted that he had not complied with the platting requirements before selling two of the lots in the Fifth Addition. He also admitted stating that he would sell other lots in the future without prior plat approval, but denied that he had done this upon multiple occasions in the past.

After a hearing, the preliminary injunction was granted. The borough subsequently requested summary judgment granting the permanent injunction. On April 15, 1980, the borough obtained a broad permanent injunction barring Vogler from "transferring, selling, or contracting to sell any real property within the Fairbanks North Star Borough unless a plat for such property has first been prepared, approved and recorded, or unless a waiver of such platting requirement has first been

duly granted by the Fairbanks North Star Borough Planning Commission."[3]

On November 21, 1980, after appeal was filed with this court, the borough gave final approval to the plat for the Fifth Addition.[4] This action allows Vogler to sell the remaining lot in the Fifth Addition. However, there is still a permanent injunction in effect which prevents Vogler from transferring any other land in the borough without first complying with the platting requirements.

■ Vogler argues that the permanent injunction is improper because it fails to comply with Civil Rule 65(d). We conclude that this claim is without merit. The April 15, 1980, judgment states the reasons for its issuance and describes the acts sought to be restrained in sufficient detail to meet the requirements of Civil Rule 65(d).[5]

■ Vogler also argues that the permanent injunction is not warranted because the borough has an adequate remedy at law. Again, we find no merit in his claim. The reasons for our conclusion are twofold.

First, this action was for an injunction authorized by a specific law.[6] AS 29.33.-

---

2. AS 29.33.190(a) provides:

   The owner or agent of the owner of land located within a subdivision who transfers, sells, or enters into a contract to sell land in a subdivision before a plat of the subdivision has been prepared, approved, and recorded, is guilty of a misdemeanor and upon conviction is punishable by a fine of not more than $500 for each lot or parcel transferred, sold, or included in a contract to be sold. The borough may enjoin a transfer, sale, or contract to sell, and may recover the penalty by appropriate legal action.

3. On May 22, 1980, after appeal had been filed to this court, the superior court amended the injunction to restrict the prohibition on sale of land to the sale of "any of the property in the Fifth Addition of University Heights Subdivision." On April 6, 1981, we granted the borough's motion to quash the amended injunction because Vogler's motion to amend the injunction was untimely filed under Civil Rule 59(f) and inappropriate for consideration under Civil Rule 60(a) or (b). Our action left in effect the subject of this appeal, which is the original injunction restricting the sale of all of Vogler's land within the North Star Borough.

4. On appeal, Vogler raises several issues concerning the validity of the borough's denial of final approval. His principal issue in this regard is that FNSB 17.08.115, relating to the type of gravel required for roads, is invalid. We have held in note 1 *supra* that this ordinance is valid and that Vogler's argument to the contrary has no merit. With respect to the other issues concerning the validity of the borough's denial of approval, the borough's action of November 21, 1980, renders those issues moot and we do not consider them in this decision.

5. Civil Rule 65(d) provides in pertinent part:

   Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained . . . .

6. The statutory basis for the injunction also overcomes any generalized objection based on the fact that it enjoins acts which are in themselves illegal. The general rule that equity will not enjoin a crime does not apply when the statute making the conduct illegal provides for

190(a) makes it a misdemeanor to transfer, sell or contract to sell property in a subdivision without meeting platting requirements. It also provides that the borough "may enjoin a transfer, sale or contract to sell" in violation of the statute. Where a statute authorizes an injunction to prevent its violation, an injunction may be granted without a showing of a lack of an adequate remedy at law.[7]

Second, although the statute does not explicitly permit the borough to enjoin continuing violations, this type of injunctive relief is appropriate when the person enjoined has violated the statute in the past and circumstances indicate that future violations are likely.[8]

The borough has shown that Vogler has in the past sold land without meeting platting requirements in violation of AS 29.33.-190(a) and certain borough ordinances. It is uncontested that Vogler had knowingly sold two lots in the Fifth Addition for which no final approval had been obtained. The borough has also shown that, contrary to Vogler's denial of the allegation in the complaint, in two separate adjudications he had been found to have sold lots without first obtaining approval.

In addition, there is evidence to support the borough's contention that Vogler intends to continue to violate the requirements of the statute and the ordinance. In his answer to the borough's complaint, Vogler "wholeheartedly admits" the allegation that he

refuses to resubmit the ... final plat, accompanied with the durability analysis report [for the Fifth Addition road], and has stated that he fully intends to convey other lots without prior approval by the Fairbanks North Star Borough Planning Commission.

At the hearing on the motion for preliminary injunction, William Lacher, platting officer for the borough, was asked whether he had talked to Vogler about the two lots in the Fifth Addition that Vogler had transferred without first complying with the requirement that a plat of such property be approved and recorded. Lacher replied:

Yes. I spoke to Mr. Vogler and followed it up with a letter to Mr. Vogler confirming our conversation, and was told that he would continue to sell property without the benefit of approval by the Planning Commission, by metes and bounds descriptions, and continue to subdivide property contrary to Borough ordinance and State statute.

At the hearing, Vogler also testified that he did not intend to comply with the gravel ordinance, compliance with which is necessary to receive final plat approval.

From this, the court could conclude that Vogler has no intention of abiding by the law governing subdivision platting requirements, despite the penalty provision of AS 29.33.190. Hence, an injunctive deterrent is justified. The judgment is affirmed.

AFFIRMED.

BURKE, J., not participating.

---

injunctive relief. *See, e. g., United States v. Cappetto,* 502 F.2d 1351 (7th Cir. 1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975); *United States v. Kentland-Elkhorn Coal Corp.,* 353 F.Supp. 451 (E.D.Ky.1973).

**7.** 43A C.J.S. Injunctions § 133, at 251 (1978); 42 Am.Jur.2d Injunctions § 38, at 776, and § 159, at 920 (1969).

**8.** *See Zenith Radio Corp. v. Hazeltine Research,* 395 U.S. 100, 131–32, 89 S.Ct. 1562, 1580–81, 23 L.Ed.2d 129, 153 (1969); *NLRB v. Express Publishing Co.,* 312 U.S. 426, 436–37, 61 S.Ct. 693, 699–70, 85 L.Ed. 930, 937 (1941); *Professional Fire Fighters, Inc. v. City of Los Angeles,* 60 Cal.2d 276, 32 Cal.Rptr. 830, 384 P.2d 158, 164 (1963); *Semke v. State ex rel. Okla. Motor Vehicle Comm'n,* 465 P.2d 441, 445 (Okl.1970).