James A. CARROLL, James Adkins and
Guy Whitney, Appellants,

v.

**EL DORADO ESTATES DIVISION
NUMBER TWO ASSOCIATION,
INC., Appellee.**

No. 7827.

Supreme Court of Alaska.

April 6, 1984.

Charles D. Silvey, Schaible, Staley, DeLisio & Cook, Inc., Fairbanks, for appellants.

James S. Magoffin, Jr., Fairbanks, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

PER CURIAM.

In this case an incorporated association of condominium owners brought suit to enforce a bylaw of the association which bans residential possession of animals, i.e., pets. The court granted summary judgment in the association's favor.

We find that the bylaw was not validly adopted and we reverse.

### I.

The El Dorado Estates Division Number Two Association, Inc. [Association] was established pursuant to a condominium declaration[1] filed in 1976. The Association is a corporation which, through its Board of Directors, manages the business affairs of the condominium property on behalf of the unit owners. Under the declaration, the Association also has responsibility for the enforcement of its bylaws and of the rules and regulations of occupancy.

At the time the condominium declaration was filed, pets were permitted. Article IX of the declaration states in part:

> Section 6. *Animals.* The Association may by rules and regulations prohibit or limit the raising, breeding or keeping of animals in any unit or on the common areas or any part thereof.

Article VIII of the bylaws of the Association permitted pet ownership, subject to certain restrictions.[2]

At the Association's annual meeting on June 28, 1979, twenty of twenty-three unit owners were present in person or by proxy. A proposed amendment to Article VIII, Section 1, clause (f) of the bylaws was adopted. The amendment prohibited pet ownership, except for existing pets.[3]

In September, 1982, the Association filed a lawsuit seeking an injunction enforcing the amended bylaw against three unit own-

---

1. *See* AS 34.07.010.

2. Article VIII states in part:
   Section 1. *Rules and Regulations.*
   . . . .
   f) If any resident shall keep a dog or other pet in his Unit, he shall take all special care required to insure that such pet shall not disturb other condominium residents in any way. If the Board of Directors shall receive a written complaint signed by any Owners concerning a bothersome animal, the Board shall, in its discretion, take action to eliminate the problem and may require the Owner of such pet to dispose of the pet, regardless of when the pet was obtained, or whether other Owners are permitted to retain their pets. Residents shall not have on the premises more than one pet. Such pet shall never be permitted in common areas without a handler. Each pet owner shall promptly remove and properly dispose of all animal waste deposited by his pet in the common area whether inside or outside the building; and each pet owner shall be responsible for the repair of all damaged areas, including damage to shrubberies and lawns.

3. The amendment repealed the provision quoted in n. 2, *supra,* and replaced it with this language:

   No animals or pets will be permitted on the premises, that is in the individual units or in the common areas, effective this date and with this By-laws change. Any unit owner, tenant or guest who presently has an animal or pet may be permitted to keep his or her pet until such time as their pet is disposed of. At this time they may not replace the animal or pet with another. Any unit owner or tenant who presently has an animal or pet in his unit shall take all special care required to insure that such pet shall not disturb other condominium residents in any way. If the Board of Directors shall receive a written complaint signed by an owner concerning a bothersome pet the Board shall take action to eliminate the problem and may require the owner of such a pet to dispose of the pet. Pets may not be permitted in the common areas without a handler. Each pet owner shall promptly remove and properly dispose of all animal wastes deposited by his pet in the common areas whether inside or outside the building; and each pet owner shall be responsible for the repair of all damaged area including damage to shrubberies and lawns.

ers, James A. Carroll, James Adkins, and Guy Whitney (collectively referred to as "Carroll"). Carroll's motion to dismiss the complaint on the ground that injunctive relief was not available was denied.

Carroll was the only one of the three who had been a unit owner at the time of the 1979 annual meeting. All three owners conceded that they now own pets in violation of the amended bylaw. They defended the action on the basis that the amendment was invalid, for the following reasons: (1) timely and adequate notice of the purpose of the annual meeting was not given; (2) the proxy solicitation was materially misleading; and (3) the pet ban restricted their ownership rights as set forth in the declaration.

On cross motions for summary judgment the superior court rejected these contentions and granted summary judgment in the Association's favor. The unit owners appeal.

## II.

### A. *Injunctive Relief.*

Carroll contends that injunctive relief was not available because the plaintiff did not plead or prove that it would be irreparably harmed. It has not shown that the pets are in any way a nuisance, or that they reduce the property values, or that there have been any complaints about them. Carroll argues that the Association has shown nothing more than that its bylaw has been violated, without any demonstration of any harm or injury.

The Association does not assert that it will be irreparably injured if an injunction, or specific performance, is denied. It simply asserts, without citing any authority, that it is entitled to have its bylaws enforced by a court order, and that Carroll did not adequately raise this issue below.

■■■■■ The record establishes that Carroll's motion to dismiss adequately raised this issue. It is clear that the Association has not shown that all equitable grounds

normally required for injunctive relief are present; rather, it has shown only the bare fact that its bylaw is being violated. That in itself is sufficient, however, since injunctive relief is specifically authorized by the Horizontal Property Regimes Act as a remedy for the failure to "comply strictly with the bylaws" of a condominium association. AS 34.07.360. Where a statute specifically authorizes injunctive relief, the plaintiff need not show either irreparable injury or lack of an adequate remedy at law. *See Vogler v. Fairbanks North Star Borough,* 635 P.2d 462, 464 (Alaska 1981); 43A C.J.S. *Injunctions* § 133, at 251 (1978); 42 Am. Jur.2d *Injunctions* § 38, at 776 (1969). Furthermore, as a practical matter injunctive relief is the only way to adequately enforce a bylaw of this nature.

### B. *Sufficiency of Notice.*

Carroll argues that because the notice of the meeting did not indicate that a pet ban would be considered, it was insufficient. The Association bylaws require that the notice contain a statement of the purpose of the meeting. A mere statement that amendments to the bylaws will be considered, without any specificity as to which bylaws or the general nature of the proposed amendments, is inadequate to fulfill this requirement. Carroll cites several cases in support of this argument. *See Des Moines Life & Annuity Co. v. Midland Insurance Co.,* 6 F.2d 228, 229 (D.C. Minn.1925); *Blum v. Latter,* 163 So.2d 189, 193–94 (La.App.1964); *Klein v. Scranton Life Insurance Co.,* 139 Pa.Super. 369, 11 A.2d 770, 775 (1940); *Mueller v. Merz,* 23 Wis.2d 588, 127 N.W.2d 774, 776 (1964).

The Association contends that its notice was adequate, since it informed the unit owners that "Proposed Amendments to Bylaws" were on the agenda. The corporate cases cited by Carroll are distinguishable, it contends. Even if the notice was inadequate, Carroll's attendance by proxy waives any objection, the Association argues.[4]

---

**4.** Article II, Section 7 of the bylaws states:

Section 7. *Notice of Meetings.* The Secretary

The Alaska statutes and the Model Business Corporation Act, unlike the Association's bylaws, do not specifically require that the notice of a corporation's annual meeting specify the purpose of the meeting. Model Business Corp. Act § 29 (1971); AS 10.05.141; AS 10.20.066.[5] However, there are significant differences between memberships in a condominium association and status as a shareholder in the typical corporation. Members of a condominium association have a heightened interest in the affairs of the association inasmuch as it regulates the conditions of their residence. Shareholders typically have only a financial interest in corporate affairs, and, in addition, their ownership interests are often more readily transferable than realty. A higher standard of notice for condominium associations may therefore be appropriate.

■ The Uniform Condominium Act promulgated by the Commission on Uniform State Laws in 1977 requires that "[t]he notice of any meeting [of the association] must state the time and place of the meeting and the items on the agenda, including the general nature of any proposed amendment to the declaration or bylaws." Uniform Condominium Act § 3–108, 7 U.L.A. 177 (1978). In 1980, a revised Uniform Condominium Act was promulgated, which broadens the notice requirement to include, in addition to changes in the declaration or bylaws, "any budget changes, and any proposal to remove a director or officer." 7 U.L.A.Supp. at 187 (1983). These provisions indicate the importance of advance notification of changes in the bylaws. They add specific content to the general concept of purpose expressed in the association's bylaws. We think it is appropriate to follow the lead of the uniform act and hold that the term purpose includes notice of the general nature of proposed amendments to bylaws.[6]

■ The importance of prior notice of amendments to the bylaws is also indicated by the fact that the Association's Board of Directors in this case directed the Association's secretary to provide a copy of the proposed amendments with the notice, and

shall at least seven (7) days before the date set for each annual and special meeting give written notice thereof to each Unit Owner according to the Association's record of ownership, stating whether it is an annual or special meeting, the authority for the call thereof, the place, day and hour of such meeting and the purpose therefor, in any of the following ways: (a) by leaving the same with him personally, or (b) by leaving the same at his residence or usual place of business, or (c) by mailing it, postage prepaid, addressed to him at his address as it appears on the record of ownership of the Association. If notice is given pursuant to the provisions of this section, the failure of any Unit Owner to receive actual notice of such meeting shall in no way invalidate the meeting or any proceedings thereat. *The presence of any Unit Owner in person or by proxy at any meeting shall be deemed a waiver of any required notice as to such Unit Owner, unless such Unit Owner shall at the opening thereof object to the holding of such meeting for noncompliance with the provisions of this section.*
(Emphasis added).

5. According to Fletcher Cyclopedia of Corporations, it is not ordinarily necessary to give specific notice of the business to be conducted at an annual meeting. The reason is that *all* sub-

jects are proper at such a meeting, and a requirement of advance notification as to topics for an annual meeting would inappropriately restrict the shareholders from bringing things up that they wanted discussed. However, "[a]n exception is made where unusual or extraordinary business not ordinarily brought up at a general meeting, such as an increase of stock, or an amendment of the bylaws in some fundamental particular ... is to be approved at the meeting." 5 E. Smith, Fletcher Cyclopedia of Corporations § 2009, at 55 (Rev. ed. 1976) (footnotes omitted).

6. In the context of contractual arrangements we have previously utilized the framework of the Uniform Commercial Code to resolve disputes which were not precisely within its scope. *See Cousineau v. Walker,* 613 P.2d 608 (Alaska 1980); *Rego v. Decker,* 482 P.2d 834 (Alaska 1971). As stated in *Morrow v. New Moon Homes, Inc.,* 548 P.2d 279, 287 n. 24 (Alaska 1976), "[a]lthough Alaska's legislature did not enact the Official Comments as part of Title 45, and we do not find them necessarily controlling in all instances in interpreting the Code, they are of persuasive assistance in construction and application of the code." (citations omitted). Likewise, while the Uniform Condominium Act has not been adopted in Alaska it is of assistance in interpreting the bylaws in this case.

it was only by oversight that the notification failed to include a copy.

For these reasons we conclude that the bylaws' requirement that the notice of the annual meeting must include a statement of the purpose of the meeting means that members must be informed of the general nature of proposed amendments to the bylaws. The notice of annual meeting failed to inform the members of the general nature of proposed amendments, and hence did not constitute notice as to that matter.

### III.

██ We hold that the notice of the annual meeting was inadequate to satisfy the requirements of the Association's bylaws. Attendance by proxy was not a waiver of the defective notice.

Article II, Section 7 of the bylaws states in part:

> The presence of any Unit Owner in person or by proxy at any meeting shall be deemed a waiver of any required notice as to such Unit Owner unless such Unit Owner shall at the opening thereof object to the holding of such meeting for noncompliance with the provisions of this section.

██ Arguably, the waiver provision applies to any defect in notification, including a failure of notice. Without determining the full scope of the waiver provision, we decline to read it so broadly as to encompass notice of the general nature of proposed amendments.[7]

The judgment is REVERSED, and this case is REMANDED for further proceedings.

---

7. Carroll argues that the bylaw prohibiting pet ownership improperly eliminates property rights granted in the condominium declaration. Since the pet ownership right granted in the declaration was specifically made conditional and subject to change, this argument lacks merit.

Carroll further contends that banning pets was a material amendment to the bylaws requiring the written approval of 100% of the mortgage holders pursuant to Article X of the bylaws. While a change in pet ownership rights is material from the unit owners' perspective, we do not find it material from the mortgage holders' perspective.