560 A.2d 191

**Harry M. ZERBEY and Joseph H. Zerbey, IV, Appellees,**

v.

**J.H. ZERBEY NEWSPAPERS, INC., Appellant.**

Superior Court of Pennsylvania.

Argued March 29, 1989.

Filed June 12, 1989.

J. Tomlinson Fort, Pittsburgh, for appellant.

John M. Elliott, Philadelphia, for appellees.

Before MONTEMURO, TAMILIA and MONTGOMERY, JJ.

MONTEMURO, Judge:

This is an appeal from a summary judgment entered by an Order of the Court of Common Pleas of Schuylkill County in favor of the appellees, Harry M. Zerbey and Joseph H. Zerbey, IV. It is axiomatic that a motion for summary judgment may be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The court, in considering a motion for summary judgment, must examine

the record before it in the light most favorable to the nonmoving party and resolve all doubt against the moving party. In the instant case, the trial court was cognizant of these principles, and we find no error in the entry of summary judgment. Consequently, we affirm.

In January of 1985, Mrs. Joseph H. Zerbey, III, the original plaintiff in this action, filed a complaint which requested the court to order the appellant, J.H. Zerbey Newspapers, Inc., to make available for Mrs. Zerbey's inspection and copying the following records of the corporation:

a. Salaries of all officers, directors, and employees and consultants, including former employees engaged as consultants, from 1980 to the present;

b. Bonuses paid to all officers, directors, and employees and consultants, including former employees engaged as consultants, from 1980 to present;

c. Pension contributions made by and to all officers, directors, and employees and consultants, including former employees engaged as consultants, from 1980 to the present and review the complete actuary report for the years 1980 through 1983;

d. Any other remuneration paid to all officers, directors, and employees and consultants, including former employees engaged as consultants, from 1980 to the present, including reimbursement for expenses; and

e. Any travel expenses or reimbursement paid to senior staff from 1980 to the present or officers, directors, employees and consultants, including former employees engaged as consultants.

R.R. at 6a. At the time of the filing of this complaint, Mrs. Zerbey was a stockholder in Zerbey Newspapers, holding ten shares. Following Mrs. Zerbey's death on May 31, 1986, her shares passed equally to her sons, appellees Harry M. Zerbey and Joseph H. Zerbey, IV. Appellees were substituted as plaintiffs in this action on August 13, 1986.

This action has been brought pursuant to various provisions of 15 Pa.S.A. § 1308:

B. Every shareholder shall, upon written demand under oath stating the purpose thereof, have a right to examine in person or by agent or attorney, during the usual hours for business for any proper purpose, the share register, books or records of account, and records of the proceedings of the shareholders and directors, and make copies or extracts therefrom. A proper purpose shall mean a purpose reasonably related to such person's interest as a shareholder. In every instance where an attorney or other agent shall be the person who seeks the right to inspection, the demand under oath shall be accompanied by a power of attorney or such other writing which authorizes the attorney or other agent to so act on behalf of the shareholder. The demand under oath shall be directed to the corporation at its registered office in this Commonwealth or at its principal place of business. C. If the corporation, or an officer or agent thereof, refuses to permit an inspection sought by a shareholder or attorney or other agent acting for the shareholder pursuant to subsection B of this section or does not reply to the demand within five business days after the demand has been made, the shareholder may apply to the court of common pleas of the county in which the registered office of the corporation is located for an order to compel such inspection. Such court of common pleas is hereby vested with exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought. The court may summarily order the corporation to permit the shareholder to inspect the share register and the other books and records of the corporation and to make copies or extracts therefrom; or the court may order the corporation to furnish to the shareholder a list of its shareholders as of a specific date on condition that the shareholder first pay to the corporation the reasonable cost of obtaining and furnishing such list and on such other conditions as the court deems appropriate. Where the shareholder seeks to inspect the books and

records of the corporation, other than its share register or list of shareholders, he shall first establish (1) that he has complied with the provisions of this section respecting the form and manner of making demand for inspection of such document; and (2) that the inspection he seeks is for a proper purpose. Where the shareholder seeks to inspect the share register or list of shareholders of the corporation and he has complied with the provisions of this section respecting the form and manner of making demand for inspection of such documents, the burden of proof shall be upon the corporation to establish that the inspection he seeks is for an improper purpose. The court may, in its discretion, prescribe any limitations or conditions with reference to the inspection, or award such other or further relief as the court may deem just and proper. The court may order books, documents and records, pertinent extracts therefrom, or duly authenticated copies thereof, to be brought within this Commonwealth and kept in this Commonwealth upon such terms and conditions as the order may prescribe.

There is no question that Mrs. Zerbey, prior to filing her complaint, did make a written demand, under oath, for the right to examine various documents and records of Zerbey Newspapers, which was refused. The central dispute is whether Mrs. Zerbey, and now substituted plaintiffs, Harry M. Zerbey and Joseph H. Zerbey, IV, have set forth a "proper purpose" within the meaning and intent of 15 Pa.S.A. § 1308.

In her original demand letter to Zerbey Newspapers, which was attached to the complaint, Mrs. Zerbey stated that the purpose for the requested inspection of corporate documents was "to determine the nature and extent of certain corporate expenditures which effect my interest in J.H. Zerbey Newspapers, Inc." R.R. at 9a. Appellees Harry M. Zerbey and Joseph H. Zerbey, IV, continue to adopt this reason as the purpose for the document inspection request, *id.* at 582a and 631a, and Joseph testified as follows during his February 3, 1987, deposition:

Q. What is your purpose in wanting to see information concerning every employee whether salary or on an hourly basis no matter what their responsibility since 1980?

A. I believe—being in business, I believe it's important to find out how the business is operated. I believe it's important to know whether or not these hourly rates and/or salaries are in line with industry standards. To give one a sense of how the business is run, one should be able to see all the parts to that.

    \*    \*    \*    \*    \*    \*

Q. But I'm asking if you have any information from other sources that, in fact, former employees are being paid salaries or hourly rates other than by pensions.

A. Yes.

Q. What information do you have?

A. It was information about a former employee, I believe the editor, who was still being paid by the corporation but was no longer physically present in the newspaper but residing in another state.

Q. What is the identity of that person?

A. I believe his name was Costello.

    \*    \*    \*    \*    \*    \*

Q. Do you have any other information concerning payments made other than by pension to former employees?

A. Not information. I've seen some bylines of former employees contributing written articles to the newspaper. Obviously I don't know whether or not they've been paid.

Q. Can you identify those employees, please?

A. No. Just several of them. A name that comes to me is Estelle Powers for one. I've seen her byline.

    \*    \*    \*    \*    \*    \*

Q. ....My question is why do you want [the information concerning bonus payments?]

A. Because I think it's important for a stockholder of a closed small corporation to be able to know if the corporation has paid bonuses to any officers, directors, employees, consultants, including former employees acting as consultants, in order to know if the property is being properly managed.

*    *    *    *    *    *

Q. Do you have any information or reason to believe that the pension contributions made by J.H. Zerbey Newspapers, Inc., are not in accordance with industry standards....

A. It is really noninformation. When I requested it as a director, I was provided pension information with all names whited out. It would lead one to believe that there was obviously a reason. I got information that was incomplete.

R.R. at 586a–587a, 589a, 590a, 596a, 599a.

The trial court specifically found that the appellees set forth a proper purpose to support their request to inspect certain corporate documents and records of Zerbey Newspapers. This decision cannot be properly considered without a general understanding of the corporate structure of Zerbey Newspapers. Zerbey Newspapers is not a publicly held corporation. The Zerbey Trust owns 5,960 shares of the 6000 outstanding shares of this corporation. Four directors of the Zerbey Newspapers also serve as trustees of the Zerbey trust: Thomas A. Elliott, Jr., Lewis M. Koch, Paul Orkin, Willis R. Parnell. There are eleven directors of Zerbey Newspapers, and appellee Joseph M. Zerbey, IV, is one of them. However, appellee Joseph M. Zerbey did not become a director until January 31, 1985. Other directors include Uzal H. Martz, Jr., president and editor of Zerbey Newspapers, and his sister Johanna Zerbey Martz (who jointly own nine shares), and their cousin Margareta Lazarus Paduch (who owns one share). These latter three

individuals are also income beneficiaries of the Zerbey Trust, as are the appellees.

At the time of Mrs. Zerbey's request for inspection of corporate documents, appellees had instituted an action seeking to be declared directors of Zerbey Newspapers and to oust the incumbent directors of the company. R.R. at 647a.[1] Previously, appellees Harry Zerbey and Joseph H. Zerbey, IV, had successfully appealed a final decree which had interpreted the will of their great-grandfather, Joseph Henry Zerbey, in such a way as to preclude them from being recognized as income beneficiaries under the Zerbey Trust. This Court, in *Estate of Zerbey*, 313 Pa.Super. 297, 459 A.2d 1237 (1983), reversed the trial court and held that the term "my grandchildren" in the will of Joseph Henry Zerbey also included the children of deceased grandchildren. Thus, Harry Zerbey and Joseph H. Zerbey, IV, were recognized as income beneficiaries of the Zerbey Trust, along with the grandchildren of the testator: Johanna Zerbey Martz, Uzal Martz, Jr., and Margareta Lazaruas Paduch. Further, in October of 1984, Trustee Paul Orkin requested that information substantially similar to that requested by Mrs. Zerbey be furnished to him. This request came in response to a proceeding, brought by Uzal H. Martz, Jr., and others, wherein petitioners sought a court order to remove Paul Orkin as a Trustee of the Zerbey Trust. Mr. Orkin, in his petition requesting the production of corporate documents, alleged that Uzal Martz had refused to supply him with access to certain corporate records. Mr. Orkin claimed that he had received information that Uzal Martz had a practice of unilaterally awarding substantial bonuses to himself and to others without referral to the directors of Zerbey Newspapers and that Uzal Martz was receiving excessive compensation. Also, Mr. Orkin claimed that he had been provided with incomplete information concerning

1. This action was ultimately rendered moot, when Joseph H. Zerbey, IV, was named as a director of Zerbey Newspapers during January of 1985.

the corporation's pension program.[2]

It is against the above backdrop that, in 1985, Mrs. Zerbey filed her request pursuant to 15 Pa.S.A. § 1308. In responding to the request, Zerbey Newspapers set forth the following new matter:

11. The information requested in the alleged Demand for Inspection is sought for an improper purpose, namely for the use by persons who are not shareholders of J.H. Zerbey Newspapers, Inc., and whose interests are in fact adverse and inimical to J.H. Zerbey Newspapers, Inc.

12. The persons described in the preceding paragraph demonstrated their adversity to J.H. Zerbey Newspapers, Inc., by initiating litigation against the corporation, its officers, and its directors.

13. The information sought in the alleged Demand for Inspection is of a sensitive and confidential nature and could be used by those persons to the detriment of J.H. Zerbey Newspapers, Inc.

R.R. at 17a–18a. It is clear that the appellees in the case at bar were those nonshareholders, referred to in the above pleading, with interests alleged to be "adverse and inimical" to Zerbey Newspapers.

The trial court, in considering the summary judgment motion filed by appellees, was provided with the deposition testimony of Uzal H. Martz, Jr. In his May 1, 1985, deposition, Mr. Martz testified that he believed Mrs. Zerbey had requested the document inspection to help the actions of her sons "to put themselves on the Board [of Directors], or on certain committees of the Board. *Id.* at 97a. Mr. Martz also testified that "... I and all members of the Audit and Personnel and Pension Committees feel that the individual salaries are of the highest order of confidentiality and sensitivity." *Id.* at 174a. In a later deposition, taken on October 1, 1985, Mr. Martz testified that "[t]here are no

2. We are not able to determine, from the record before us, what, if anything, ultimately resulted from Mr. Orkin's document inspection request. However, this is irrelevant for the purposes of the instant appeal.

bonuses paid to anyone in the newspaper." *Id.* at 250a. When questioned concerning whether Zerbey Newspapers had made loans to any officers or directors, Mr. Martz testified that one loan had been made to him personally:

A. That loan was made in 1974, by the Board of Directors. It was a $55,000 loan, fully collateralized by life insurance, second mortgage, promissory note, provided for annual repayments of $2,500 twice a year. Details have been in the financial statements, and Price Waterhouse has certified in the financial statements that it's paid down as agreed.

Q. And is that loan paid off?

A. Today there is a $12,500 balance outstanding.

*Id.* at 277a. This loan was made on a no interest basis. *Id.* at 335a.

Two affidavits of Uzal H. Martz, Jr., were also before the trial court as it considered appellees' summary judgment motion. In his June 13, 1988, affidavit, Mr. Martz states that Zerbey Newspapers is audited annually by Price Waterhouse and that each director receives detailed financial information concerning the balance sheet, revenue, and expenses on a monthly basis. Mr. Martz also testified as follows:

In my opinion, Plaintiffs Harry M. Zerbey and Joseph H. Zerbey, IV, do not have a proper purpose for requesting this information. On the contrary, this request and the instant litigation are part of a continuing pattern of harassment whereby Joseph H. Zerbey, IV, in particular, seeks to exercise increased control over Defendant Zerbey Newspapers, particularly by forcing his election to the Journalistic and Marketing Committee of the Board of Directors.

> \* \* \* \* \* \*

With a vague and generalized statement of purpose, Plaintiffs seek to examine detailed and sensitive financial and personal records of *all* officers, employees, and consultants of Defendant Zerbey Newspapers, without a shred of evidence of any misdoing and in the face of the

careful auditing and control procedures of the Board of Directors and its committees.

R.R. at 646a, 649a.

The right of a stockholder in a corporation to inspect corporate records was recognized very early in our common law. In one case, *Kuhbach v. Irving Cut Glass Company,* 220 Pa. 427, 69 A. 981 (1908), a stockholder filed a petition to compel production of corporate documents, including pay roll and sales books. In his petition, the stockholder set forth facts alleged to demonstrate reckless mismanagement of the corporation by its officers. The evidence revealed that the company had experienced a decline in dividends and an increase in outstanding debt. The corporation denied the allegations of mismanagement and alleged that the share-holder was "not acting in good faith for the reason that he is a director in a competing glass company and desires the information that it may be used to the advantage of that company." *Id.,* 220 Pa. at 430, 69 A. at 982. The Supreme Court first dismissed the claim that the stockholder's con-tacts to a competing company would deprive him of the right to inspect corporate documents, finding that this fact "does not necessarily show an improper purpose in making demand for inspection." *Id.,* 220 Pa. at 432, 69 A. at 982 (citation omitted). In finding that the stockholder had set forth a proper purpose for an inspection of corporate records, the Supreme Court opined:

As we have suggested, the stockholders are the owners of the company's assets, and for the protection of their interests they have a right to be informed of the manage-ment of its business. If, therefore, there is apparent mismanagement or misconduct by the officers of the corporation, a stockholder has a right to make an investi-gation for himself and ascertain the true condition of the company's affairs. Of course, this right to examine the books, records and papers of the company must be exer-cised in good faith and at a proper time and place so as not to interfere with the business of the company....

It is settled at common law a stockholder of a trading corporation has a right to examine the books and papers of the company at a reasonable time and place, and for a proper purpose.

*Id.,* 220 Pa. at 433, 69 A. at 983.

The Pennsylvania Supreme Court, in *Hodder v. George Hogg Company,* 223 Pa. 196, 72 A. 553, 554 (1908), again addressed the right of a stockholder to inspect the books and records of a corporation. There, the stockholder alleged, *inter alia,* that statements of the corporation were not a correct reflection of actual profits, that salaries of officers were improperly increased, and that dividends should have been declared. As in *Kuhbach,* the corporation denied mismanagement and alleged that the stockholder "was not acting in good faith, and that he was interested in a rival concern, and that his purpose was to force a purchase of his stock at an unreasonable price." *Id.,* 223 Pa. at 198, 72 A. at 553–54. The Supreme Court affirmed the order which had compelled the corporation to arrange for an inspection of its books by the stockholder:

Realtor as a stockholder has without question the right to inspect the books of the company, at a proper time, and in a proper way, even though his only object is to ascertain whether the business has been properly conducted. Such a right is necessary for the protection of stockholders. The Realtor seeks at the present time merely for information. It may be that as a result of his examination of the books and of the records his suspicions will be shown to be groundless.

*Id.* See also *Taylor v. Eden Cementery Co.,* 337 Pa. 203, 10 A.2d 573 (1940) (recognizing that a shareholder, seeking to examine corporate books, is vitally concerned with the salaries paid to officers because exorbitant salaries decrease the net proceeds earned by the corporation, thus reducing the return from the initial investment in the stock).

In *Klein v. Scranton Life Insurance Co.,* 139 Pa.Super. 369, 11 A.2d 770 (1940), the trial court had refused to allow

an examination of corporate books, finding that the stockholders "... at no time [set] forth any complaint or averment of mismanagement, wrongdoing, unlawful activity or any violation of any law or sound principle of management." *Id.*, 139 Pa.Superior Ct. at 375, 11 A.2d at 773. This Court reversed. In *Klein,* the stockholders' stated purpose for seeking an inspection of corporate records was quite general: to ascertain whether the business of the corporation was being properly managed and for the purpose of soliciting proxies for use at the shareholders' meetings. This Court found a proper purpose for the document inspection request and, in so doing, we stated:

> It is not necessary for a stockholder to aver mismanagement or fraud to obtain his right to inspect corporate records. There is no evidence to sustain a finding that the examination of the books was sought for speculative purposes, rather than for the reasons averred in the bill.... The case of *Hodder v. George Hogg Co.* ... goes even further and establishes the right to inspect corporate records in a stockholder "even though his only object be to ascertain whether the business has been properly conducted."

*Id.* Although the stockholder need not aver mismanagement or fraud, the *Klein* Court did recognize that an inspection should not be compelled for "speculative purposes" or to " '... gratify idle curiosity or to aid a blackmailer....' " *Id.*, 139 Pa.Superior Ct. at 376, 11 A.2d at 773 (citation omitted).

In *Goldman v. Trans–United Industries, Inc.,* 404 Pa. 288, 171 A.2d 788 (1961), the Supreme Court analyzed the stockholder's rights under The Business Corporation Law of May 5, 1933. At the time of the *Goldman* decision, the relevant statute provided as follows:

> B. Every shareholder shall have a right to examine, in person or by agent or attorney, at any reasonable time, for any reasonable purpose, the share register, book or records of account, and make extracts therefrom.

15 P.S. § 1308 (1933, May 5, P.L. 364, art. III, § 308). The *Goldman* Court stated that this section of The Business Corporation Law was "merely a codification of the common law rule" which recognized a right in the shareholder to inspect the books of a corporation given a proper purpose for such a request. *Id.*, 404 Pa. at 290, 171 A.2d at 790. In *Goldman*, judgment had been granted on the pleadings. The shareholders had alleged in their complaint that the affairs of Trans–United were not being properly managed and that the books of the company were irregular. They wanted to learn the salaries paid to officers and directors, the value of corporate shares, and the names of stockholders. The company alleged that the true purpose for the petition was "to gain control of the corporation through a general plan designed to deflate the market value of Trans–United Stock while simultaneously inflating the value of the stock of Son–Mark Industries, Inc., a holding company in which the [stockholders] have an interest and through which they intend to gain control of Trans–United." *Id.*

The Supreme Court in *Goldman* reversed and remanded to allow evidence to be received relevant to the averments set forth by the corporation in its answer.[3] The Court concluded that if the facts in the answer were proven, then no proper purpose could be found for a general examination of corporate records and books, in that the inspection would not further the interests of the stockholders of Trans–United or Trans–United itself. *See also Hagy v. Premier Manufacturing Corporation*, 404 Pa. 330, 172 A.2d 283 (1961) (corporation's evidence that the stockholder's demand to inspect records was in bad faith should have been heard by the trial court; plaintiff, a former president of the defendant corporation and owner of 44% of the corporation's common stock, had made an agreement to sell his

---

**3.** The Supreme Court did, however, affirm the order to the extent of allowing the stockholders to obtain the stockholder list, recognizing that a stockholder's right to this information is more liberally construed. "The primary purpose for this special treatment lies in the very nature and purpose for obtaining the stockholders lists; i.e., to influence the vote at an impending stockholders' meeting." *Goldman, supra*, 404 Pa. at 292, 171 A.2d at 791.

stock to the defendant corporation's leading competitor in exchange for employment with that competitor and, further, plaintiff had supplied the competitor with confidential information concerning trade secrets of the defendant and had solicited defendant's employees to work for such competitor).

The most recent case to address this area of the law is *Sto–Rox Focus on Renewal Neighborhood v. King,* 40 Pa.Commw. 640, 398 A.2d 241 (1979). There, as in the instant case, the plaintiff-stockholders based their request to examine corporate records on a general desire to determine whether the corporation had any financial irregularities and to apprise themselves of the corporate salaries, property, and income. "Plaintiffs suspected mismanagement, based upon reports of certain corporate activity; e.g., it was reported that county officials requested and were refused certain corporate financial information." *Id.* at 645, 398 A.2d at 243. We find this analogous to the undisputed fact in the instant case that a director of Zerbey Newspapers, Mr. Orkin, had requested access to certain corporate records but his request had been denied. The Commonwealth Court, in *Sto–Rox Focus on Renewal Neighborhood,* recognized that the "[i]nspection of corporate records to determine whether a corporation is managed properly is a reasonable purpose." *Id.* The corporation had maintained that no proper purpose had been set forth by the stockholders, because these particular stockholders were part of a group that vocally opposed corporate policies and leaders. Further, these stockholders made inquiries as to whether corporate funds were being properly expended. The Commonwealth Court, however, found no error in the trial court's conclusion that a proper purpose had been established, noting that the corporation's evidence "does not necessarily demonstrate an improper purpose or motivation for seeking to inspect corporate records." *Id.*

■ Although the case at bar must be determined under 15 Pa.S.A. § 1308, as amended in 1968, there is no indication in the amended statute that the construction of a

"proper purpose" to inspect corporate records differs from the construction of that term under the common law and under the prior statute. The case law which we have outlined above is thus applicable and guides us in the decision we now reach. Clearly, whether a stockholder has set forth a "proper purpose" to inspect corporate records is a determination which must be made on a case-by-case basis following a careful consideration of the surrounding circumstances of the document inspection request.

■ We find that the appellees have set forth a proper purpose because, as their deposition testimony reveals, they want to determine whether Zerbey Newspapers is being properly managed in a general sense, In particular, they want to determine whether corporate expenditures for such items as salaries and pensions conform with industry standards, and thus, whether these expenditures are in the best interests of Zerbey Newspapers. These are certainly purposes reasonably related to appellees' interests as stockholders. Further, at the time of the original petition filed by Mrs. Zerbey, a director of the corporation, Mr. Orkin, had filed a petition to compel the production of corporate records, because *he* believed that certain corporate expenditures were excessive or unreasonable. This undisputed fact certainly creates a reasonable suspicion that Zerbey Newspapers was, and perhaps continues to be, improperly managed.

Zerbey Newspapers' arguments that the request should be refused because the appellees' concerns are unfounded and vague, or because appellee Joseph H. Zerbey, IV, desires a position on a corporate committee utterly fail to establish that the request has been made for an improper purpose. This is not a case of bad faith, where a stockholder is attempting to undermine or negatively affect the continued viability of the corporation. Further, appellees are not aligned with a competing corporation which could benefit from information contained in the records of Zerbey Newspapers. At most, Zerbey Newspapers has simply alleged that Joseph H. Zerbey, IV, wants to have more

involvement in the management and future of Zerbey Newspapers. Zerbey Newspapers has gone to great lengths to show that it views its corporate expenditures to have been both reasonable and in the best interests of the corporation. It has emphasized the role of the independent auditors in the management and review of the financial stability and management of this corporation. However, it is well established in the legal precedent set forth above that the appellees are not bound to accept the statements and opinions of the officers of Zerbey Newspapers, made under oath or otherwise. *See Kuhbach v. Irving Cut Glass Co., supra.* Appellees have a right to make a personal inspection of the records and form their own opinion as to whether they agree that Zerbey Newspapers' expenditures are reasonable or appropriate. Appellees have a right to verify, for example, that no bonuses have been paid and that the salaries of corporate officers are not excessive. The fact that appellees may ultimately conclude that Zerbey Newspapers has been managed honestly, competently, and reasonably does not derogate from their present right under 15 Pa.S.A. § 1308.

Finally, we reject, as did the trial court, any claim that inspection should not be ordered because of the alleged confidential or sensitive nature of the information in the records. Specifically, Zerbey Newspapers states in its brief to this Court that the amount of compensation paid by Zerbey Newspapers is "highly confidential". Brief for Appellee at 39. This is a small, closed corporation, and appellees hold ten of the forty shares owned by private parties. Indeed, it may be that appellees are the only shareholders that do *not* have access to this information. It has never been alleged that the appellees intend to bring this information to the public light. Appellees have requested this information in order to determine whether, in their personal view, corporate expenditures are in line with industry standards. We fail to see how access to this information by these two individuals will in any way harm this particular corporation. In any event, 15 Pa.S.A. § 1308 provides that the trial court may, in its discretion, prescribe any limita-

tions or conditions with reference to the inspection it orders. Zerbey Newspapers failed to request any limitation under this statute.

For all of the foregoing reasons, we affirm the order of the trial court, which determined that appellees had set forth a proper purpose, pursuant to 15 Pa.S.A. § 1308. No material facts are in dispute and appellees are entitled to judgment as a matter of law. Accordingly, appellees must be allowed to exercise their right to inspect the records of Zerbey Newspapers.

Order affirmed.[4]

---

**4.** Zerbey Newspapers filed a stay petition with this Court on August 29, 1988. On September 29, 1988, the Honorable Stephen J. McEwen, Jr., issued an Order requiring that appellees submit an itemized list of the documents to be produced under the trial court's order. Zerbey Newspapers was then to deliver the documents under seal and protective order to the Court of Common Pleas of Schuylkill County to be held during the pendency of this appeal. It appears, from the reply brief filed by the appellant, that the parties have complied with Judge McEwen's order and have reached an agreement as to the specific documents which will be provided to the appellees to be examined.