McGuire v. LORD Corp., 2021 NCBC 3.

STATE OF NORTH CAROLINA

WAKE COUNTY

ROBERT MCGUIRE,

          Plaintiff,

v.

LORD CORPORATION,

          Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 1993

**ORDER AND OPINION ON
CROSS-MOTIONS FOR SUMMARY
JUDGMENT**

1.     **THIS MATTER** is before the Court on the parties' cross-motions for summary judgment filed on July 10, 2020. The cross-motions concern whether Pennsylvania law permits Plaintiff Robert McGuire ("McGuire"), a former employee and former shareholder of Defendant LORD Corporation ("LORD" or the "Company"), to inspect and copy certain minutes of meetings of LORD's Board of Directors and a list of LORD's shareholders owning restricted, non-voting Class B stock.[1]

2.     After considering the Motions, the briefs filed in support of and in opposition to the Motions, including supplemental briefs, the arguments of counsel at the hearing on the Motions, and other appropriate matters of record, the Court hereby **GRANTS in part** and **DENIES in part** the Motions as set forth below.

*Vennum PLLC, by Elizabeth Vennum and Jordan Burke, for Plaintiff Robert McGuire.*

*Parker Poe Adams & Bernstein LLP, by Charles E. Raynal, IV and Scott E. Bayzle, for Defendant LORD Corporation.*

---

[1] The specific motions at issue are LORD's Motion for Summary Judgment ("LORD's Motion"), (ECF No. 82), and McGuire's Motion for Summary Judgment ("McGuire's Motion"; together with LORD's Motion, the "Motions"), (ECF No. 86).

Bledsoe, Chief Judge.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

3.     The Court does not make findings of fact on motions for summary judgment; rather, the Court summarizes material facts it considers to be uncontested.  *See, e.g.*, *Vizant Techs., LLC v. YRC Worldwide, Inc.*, 373 N.C. 549, 551, 838 S.E.2d 616, 617 (2020).

4.     LORD is a Pennsylvania corporation with its principal place of business in Wake County, North Carolina.  (Mot. Order Permitting Inspection & Copying Corporate Rs. & Civil Action Declaratory Relief ¶ 2 [hereinafter "Inspection Request"], ECF No. 3; Answer LORD Corp. ¶ 2, ECF No. 14.)  McGuire served as LORD's Regional Director of Japan beginning in 2013.  (Dep. McGuire 147:18–21, ECF No. 83.1; Def.'s Br. Supp. Mot. Summ. J. Ex. 2 ¶ 11 [hereinafter "Riggins Aff."], ECF No. 83.2.)[2]

5.     Through its Management Incentive Plan, Restricted Stock Program (the "Plan" or "Stock Program"),[3] LORD offered its directors, officers, and certain key employees, including McGuire, the opportunity to acquire non-voting restricted stock in the form of Class B Common Stock ("Class B Stock").  (Riggins Aff. ¶¶ 6, 26; *see also* Dep. McGuire 141:11–42:2.)  McGuire participated in the Plan according to its

---

[2] "Riggins Aff." references the Affidavit of Charmaine Riggins.  Riggins worked for LORD until its acquisition by Parker-Hannifin Corporation ("Parker-Hannifin") in 2019.  She is currently employed as Parker-Hannifin's HR Integrations Leader.  (Riggins Aff. ¶ 1.)

[3] The Plan document creating the Stock Program is attached as Exhibit A to the Riggins Affidavit at ECF No. 83.2.

terms and acquired 675 shares of Class B Stock as provided in the Third Restated Stock Purchase Agreement McGuire entered into on May 20, 2014 (the "Agreement"). (Riggins Aff. ¶¶ 11–12, Exs. A–B; Inspection Request Ex. 5, ECF No. 3.5.)

6.     On April 7, 2017, McGuire sold 329 shares of Class B Stock.  (Dep. McGuire 141:3–7; Riggins Aff. ¶ 13, Ex. C.)  McGuire subsequently initiated litigation in this Court seeking to recover the increased value of those shares after his sale, (2019CVS11634), a matter which is now pending before the Supreme Court of North Carolina on appeal from this Court's dismissal of that action under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").  *McGuire v. LORD Corp.*, 2020 NCBC LEXIS 15 (N.C. Super. Ct. Feb. 11, 2020), *appeal docketed*, No. 320A20 (N.C. July 13, 2020).[4]

7.     On April 17, 2017, LORD representatives met with corporate representatives of a third party concerning a possible merger.  (Riggins Aff. ¶ 14.) Shortly thereafter, on April 20, 2017, LORD's Board agreed to delay the annual restricted stock offering to LORD's Directors and members of management during these merger discussions.  (Riggins Aff. ¶¶ 14–15, Ex. D (under seal).)[5]  McGuire has termed this delay, which became effective immediately, (Riggins Aff. ¶ 28), a "freeze" of the Stock Program, (Inspection Request Ex. 3 [hereinafter "Demand Letter"], ECF No. 3.3).  The merger discussions did not result in a transaction and ended later in 2017.  (Riggins Aff. ¶ 17.)

---

[4] McGuire initiated the related action on August 23, 2019.  (2019CVS11634, ECF No. 3.)

[5] The redacted, public version of the Board minutes in Exhibit D is located at ECF No. 89.1.

8.    LORD provided written notice of McGuire's termination on November 13, 2017, and McGuire's termination took effect on February 13, 2018.  (Riggins Aff. Ex. H.)  On December 19, 2017, LORD's Board terminated the Stock Program except for the redemption of stock.  (Riggins Aff. ¶¶ 16, 28, Ex. E (under seal).)[6]

9.    On January 2, 2019, McGuire sent a demand letter to LORD seeking inspection of twelve categories of LORD's corporate documents.[7]  (Demand Letter.) The letter states that McGuire sought the records "for the proper purpose of investigating the conduct of the Board of Directors in its management of the Corporation, and ascertaining whether the business has been properly conducted." (Demand Letter 3.)  The letter then states:

> Specifically, without limitation, Mr. McGuire seeks documentation and verification that the Board of Directors acted at all times in good faith and in the best interests of all shareholders, without conflicts of interest, when determining the value of restricted Class B shares, both in terms of executive compensation and in the terms and conditions of stock options for employees.

(Demand Letter 3.)

10.    The demand letter continues:

> With respect to the Board of Directors' 2017 decision to freeze the employee stock purchase program, Mr. McGuire seeks to identify the evidence, reports, financial statements, and other documentation reviewed and considered by the Board of Directors in relation to its March 2017 decision to repurchase shares from Mr. McGuire in excess of the maximum annual buyback, as well as the evidence, reports,

---

[6] The redacted, public version of the Board minutes in Exhibit E is located at ECF No. 89.2.

[7] McGuire initially sent his demand pursuant to North Carolina law on November 23, 2018. (ECF No. 3.1.)  After LORD responded that Pennsylvania law applied because LORD was incorporated in Pennsylvania, (ECF No. 3.2), McGuire sent LORD a second demand letter on January 2, 2019, this time pursuant to the Pennsylvania inspection statute, 15 Pa.C.S. § 1508, (ECF No. 3.3).

financial statements, and other documentation reviewed and considered by the Board of Directors prior to, during, and in relation to the Board's decision to freeze the employee stock purchase program in 2017. Furthermore, Mr. McGuire seeks documentation of corporate policies and procedures reflecting LORD's compliance with the Foreign Corrupt Practices Act in Asia in order to protect the interest of the shareholders should the company be engaging in illegal or unethical financial transactions and/or accounting practices in the Asian market.

(Demand Letter 3.)

11.    LORD refused to comply with McGuire's request by letter dated January 14, 2019, stating that neither a "speculative fishing expedition" nor seeking to advance his interests as a "litigant" against LORD was a proper purpose for a shareholder inspection request under the relevant Pennsylvania inspection statute.  (Inspection Request Ex. 4, ECF No. 3.4.)  McGuire thereafter initiated this action on February 13, 2019, seeking to compel inspection of the corporate records LORD refused to produce for inspection.  (*See* Inspection Request.)[8]

12.    McGuire was a LORD shareholder at the time this action was commenced. On October 30, 2019, however, LORD was acquired by Parker-Hannifin.  As part of that acquisition, LORD redeemed all its Class B Stock, including those remaining shares held by McGuire.  Thus, McGuire was no longer a LORD shareholder after LORD was acquired.  (Riggins Aff. ¶ 19.)

13.    In the course of this litigation, LORD has produced most of the corporate records McGuire has requested.  (Joint Mot. 14-Day Extension Time File Am. Case

---

[8] McGuire initially sought a declaration concerning the enforceability of the "Adverse Litigant" provision in the Agreement but voluntarily dismissed that claim on May 28, 2019. (ECF No. 24.)

Management Report ¶ 6, ECF No. 26; Riggins Aff. ¶ 23.)  The parties agree that only two sets of documents remain in dispute.

14.    The first involves certain LORD Board of Director meeting minutes. Although LORD has produced the minutes of its Board of Director meetings for the requested timeframe, (Case Management Order 4, ECF No. 33), LORD has redacted those portions relating to potential merger and acquisition activities, divestitures, and strategic opportunities on grounds that this information is "highly confidential and proprietary to LORD," and in some cases, subject to non-disclosure agreements with third parties, (Riggins Aff. ¶ 25).  LORD maintains that all Board minutes relating to the "postponement of the 2017 offering of Class B Stock on April 20, 2017, and the later termination of the [S]tock [P]rogram, have now been provided to Mr. McGuire, and such information has not been redacted from the Board minutes." (Riggins Aff. ¶ 28; *see also* Def.'s Br. Supp. Mot. Summ. J. Ex. 3, ECF No. 83.5.) McGuire seeks LORD's unredacted Board minutes concerning LORD's potential merger and acquisition activities and divestitures.

15.    The second set involves LORD's shareholder list.  McGuire seeks the names, addresses, number of shares, and class of shares held by individuals who own shares of LORD's restricted, non-voting Class B Stock.  (Case Management Order 4.)  LORD has declined to produce that list, contending that because its Class B Stock is non-voting and ownership of the stock is limited to "a controlled number of active employees" who acquired the stock "in connection with their employment and often held the stock in their retirement plans[,]" its Class B shareholder list is therefore

"highly confidential personal employee information, which LORD [has not and will not] disclose to the public or to individual stockholders." (Riggins Aff. ¶¶ 26–27.)

16. The parties filed cross-motions for summary judgment on McGuire's right to inspect and copy these two sets of documents on July 10, 2020. After full briefing, the Court held a hearing on the Motions on September 30, 2020 (the "Hearing"), at which all parties were represented by counsel.

17. The Motions are now ripe for resolution.

## II.

## LEGAL STANDARD

18. Under Rule 56, "summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Da Silva v. WakeMed*, 375 N.C. 1, 10, 846 S.E.2d 634, 641 (2020) (quoting N.C. R. Civ. P. 56(c)). "An issue is 'genuine' if it can be proven by substantial evidence and a fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and means more than a scintilla or a permissible inference." *Head v. Gould Killian CPA Grp.*, 371 N.C. 2, 8, 812 S.E.2d 831, 836 (2018) (citation and internal quotation marks omitted). The Court views all evidence "in the light most favorable to the non-moving party." *Da Silva*, 375 N.C. at 10, 846 S.E.2d at 641.

19.     The moving party bears the burden of proving that there is no genuine issue of material fact, *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002), and may meet this burden: (1) "by proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense"; or (2) "by showing through discovery that the opposing party cannot produce evidence to support an essential element of [its] claim," *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000). "If the movant successfully makes such a showing, the burden then shifts to the nonmovant to come forward with specific facts establishing the presence of a genuine factual dispute for trial." *Pennington*, 356 N.C. at 579, 573 S.E.2d at 124; *see also* N.C. R. Civ. P. 56(e) ("[A]n adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").

III.

ANALYSIS

A.     Subject Matter Jurisdiction

20.     The Court first addresses McGuire's standing to bring these claims under Pennsylvania's inspection statute, 15 Pa.C.S. § 1508, since McGuire is no longer a

LORD shareholder.[9]  As an initial matter, section 1508 is silent as to whether a shareholder must continuously own shares to maintain an action under that section. Instead, the statute permits "every shareholder" an inspection right,[10] and it does not appear that the Pennsylvania courts have addressed whether continued stock ownership is a prerequisite for maintaining a corporate records request under the statute after commencement of the action.

21.    Pennsylvania courts, however, have addressed continuous share ownership in the context of a derivative action and held, based on the absence of a continuous ownership requirement in Pennsylvania's rule authorizing derivative actions,[11] that plaintiff shareholders who owned shares when they commenced a derivative action challenging a merger did not lose standing to pursue that action when they were forced to sell their shares in the merger while the action was pending.  *See Drain v. Covenant Life Ins. Co.*, 685 A.2d 119, 125 (1996) ("[T]he rule makes no statement with respect to  continuing ownership subsequent to the commencement of the action" and

---

[9] The Court raised the issue of standing *sua sponte* and requested and received the parties' supplemental briefing on the issue.  *See, e.g., Willowmere Cmty. Ass'n v. City of Charlotte*, 370 N.C. 553, 555 n.2, 809 S.E.2d 558, 560 n.2 (2018) ("While none of defendants' motions or pleadings to the trial court explicitly raised the issue of plaintiffs' standing to bring suit, the trial court was permitted to consider the threshold question of its own subject-matter jurisdiction in ruling on the parties' cross-motions for summary judgment."); *Forsyth Cty. Bd. of Soc. Servs. v. Div. of Soc. Servs.*, 317 N.C. 689, 692, 346 S.E.2d 414, 416 (1986) ("[Q]uestions of subject matter jurisdiction may properly be raised at any point[.]"); *Conner Bros. Mach. Co. v. Rogers*, 177 N.C. App. 560, 561, 629 S.E.2d 344, 345 (2006) (noting that the court may raise the issue of subject matter jurisdiction "on its own initiative" (citation omitted)). Supplemental briefing was completed on October 21, 2020.  (ECF Nos. 103–06.)

[10] 15 Pa.C.S. § 1508(b) provides in relevant part that "[e]very shareholder shall, upon written verified demand stating the purpose thereof, have a right to examine [the company's corporate records.]"

[11] Pennsylvania Rule of Civil Procedure 1506(a).

"the rule was designed . . . [to] requir[e] ownership at the time of initiation of suit[.]" (citation omitted)). *Drain* thus offers persuasive precedent to interpret section 1508(b)'s similar silence to not require continuous share ownership in the corporate inspection context.

22. This is particularly true when the Court considers that, unlike in a derivative action, where "[a] non-shareholder or one who loses his shareholder interest during the course of the litigation may lose any incentive to pursue the litigation adequately[,]" *Portnoy v. Kawecki Berylco Indus., Inc.*, 607 F.2d 765, 767 (7th Cir. 1979), a shareholder who sells his shares in a merger after an inspection action has been filed may, in appropriate circumstances, have a continuing interest in ascertaining whether the shares were sold for fair value after the sale has been completed.

23. The Court also notes that the influential Chancery Court in Pennsylvania's neighboring state of Delaware has concluded that continuous share ownership is not required to maintain a records inspection action under 8 Del. C. § 220. *See Cutlip v. CBA Int'l, Inc.*, C.A. No. 14168 NC, 1995 Del. Ch. LEXIS 136, at *6, 8–9 (Del. Ch. Oct. 27, 1995) (holding that where plaintiffs had standing to bring a corporate records request "at the time they brought the action," a subsequent merger stripping plaintiffs of their shareholder status did "not erase" their standing under section 220); *see also Deephaven Risk Arb Trading, Ltd. v. UnitedGlobalCom, Inc.*, Civil Action No. 379-N, 2005 Del. Ch. LEXIS 107, at *27 (Del. Ch. July 13, 2005) (same). Although

addressing a different statutory scheme, the Chancery Court's view nonetheless provides support to conclude that McGuire has standing to maintain his action here.

24.     Accordingly, based on the above, the Court concludes that, if faced with the issue, the Pennsylvania Supreme Court would likely decide that a shareholder who owned shares at the time the shareholder filed an inspection action did not lose standing to maintain the action upon the forced sale of the shares after the action commenced.   The Court thus concludes it has jurisdiction to consider McGuire's inspection claims.

B.     McGuire's Alleged Proper Purpose

25.     McGuire's inspection action rises and falls on whether he has a "proper purpose" to inspect the corporate records he seeks under 15 Pa.C.S. § 1508.  As set forth in that statute:

> Every shareholder shall, upon written verified demand stating the purpose thereof, have a right to examine in person or by agent or attorney, during the usual hours for business *for any proper purpose*, the share register, books and records of account, and records of the proceedings of the incorporators, shareholders and directors and to make copies or extracts therefrom.

15 Pa.C.S. § 1508(b) (emphasis added).   Section 1508 broadly defines a "proper purpose" as "a purpose reasonably related to the interest of the person as a shareholder." *Id.*

26.     15 Pa.C.S. § 1508(c) governs proceedings to enforce a shareholder's right of inspection.   That section provides that "[i]f the corporation, or an officer or agent thereof, refuses to permit an inspection sought by a shareholder . . . , the shareholder may apply to the court for an order to compel the inspection."   Upon review of the

shareholder's request, "[t]he court shall determine whether or not the person seeking inspection is entitled to the inspection sought." *Id.* § 1508(c). "The court may, in its discretion, prescribe any limitations or conditions with reference to the inspection or award such other or further relief as the court deems just and proper." *Id.*

27. Section 1508(c) requires a shareholder seeking inspection of the corporation's books and records to "first establish: (1) [t]hat he has complied with the provisions of this section respecting the form and manner of making demand for inspection of the document[ ]" and "(2) [t]hat the inspection he seeks is for a proper purpose." *Id.* In contrast, where a shareholder seeks inspection of the corporation's share register or shareholder list, the statute provides that "the burden of proof shall be upon the corporation to establish that the inspection he seeks is for an improper purpose." *Id.*

28. Accordingly, under section 1508, McGuire has the burden to show that he has a proper purpose to inspect LORD's Board minutes concerning the Company's merger and acquisition activity, and LORD has the burden to show that McGuire's purpose in seeking LORD's non-voting Class B shareholder list is improper. As noted, however, summary judgment is only proper where there is no genuine issue as to any material fact and a party is entitled to a judgment as a matter of law. *See* N.C. R. Civ. P. 56(c). In determining whether the shareholder has advanced a proper purpose, the Court may consider relevant deposition testimony of the shareholder and others. *See Zerbey v. J.H. Zerbey Newspapers, Inc.*, 560 A.2d 191, 198 (Pa. Super. Ct. 1989).

i. <u>LORD's Board Minutes</u>

29. Turning first to McGuire's request to inspect LORD's Board minutes reflecting its corporate merger and acquisition activity, McGuire contends that he should be permitted inspection to investigate the conduct of the Board due to his suspicions that the Board engaged in improper decision making and misconduct in connection with the sale of his 329 Class B shares. (Dep. McGuire 118:14–16 ("I'm only trying to get justice on the 329 shares that Jon Oechsle told me I could sell and buy back. Then I confirmed it with Denise Austin that I could sell and buy it back, and then I sold them, and a week later, they froze the program."), 174:17–22 ("Q. Then the primary purpose of the inspection request is . . . to learn . . . the circumstances regarding the termination of the restricted stock purchase plan, . . . the timing and -- A. Right. Q. -- what Lord knew? A. And why -- and why, I guess, they weren't forthright with me."), 187:4–21 ("Like I said, I'm only concerned about Bob [McGuire]. I'm not trying to resolve what other issues might or might not exist outside of my case because that's just not my interest. . . . And my point is my primary interest, obviously, is the 329 shares."); 339:1–4 ("And all the request has been is to try to find the truth concerning the lead up to the sale that I -- I made of my shares back to the company in -- in 2017."); Mem. Law Supp. Pl.'s Mot. Summ. J. Ex. A 362:5–10 [hereinafter "2nd Dep. McGuire"], ECF No. 88 ("I simply want to understand primarily about the decision making that led to the freezing of the stock program and how that affected me and why it was not in some way communicated to me that there was a risk to sell the shares.").)

30.    McGuire argues that his separate, now dismissed, lawsuit in this Court concerns "these same matters" and that the record in both suits shows that "LORD froze its sale and repurchase program shortly after Mr. McGuire sold his shares to LORD" and McGuire "suspected that the transpiration of events was fraudulent." (Mem. Law Supp. Pl.'s Mot. Summ. J. 18, ECF No. 87.)  McGuire thus argues that inspection of records relating to LORD's suspected "corporate fraud and improper valuation of his shares" is reasonably related to his interest as a shareholder and therefore reflects a proper purpose under the Pennsylvania statute.  (Mem. Law Supp. Pl.'s Mot. Summ. J. 10, 16–17.)

31.    Under Pennsylvania law, "whether a stockholder has set forth a 'proper purpose' to inspect corporate records is a determination which must be made on a case-by-case basis following a careful consideration of the surrounding circumstances of the document inspection request." *Zerbey*, 560 A.2d at 198.  While determining proper stock value and investigating corporate mismanagement have been found to be proper purposes under Pennsylvania law,[12] a shareholder must have a reasonable basis for his inspection request, and Pennsylvania courts have long recognized that mere speculation or idle curiosity will not suffice.  *See, e.g.*, *Klein v. Scranton Life Ins. Co.*, 11 A.2d 770, 773 (Pa. Super. Ct. 1940) ("Of course, 'the writ should not be granted for speculative purposes, or to gratify idle curiosity, or to aid a blackmailer, but it

---

[12] *See, e.g.*, *Ackerman v. Kasual Computing, Inc.*, No. 2046 MDA 2015, 2016 Pa. Super. Unpub. LEXIS 1867, at *10 (Pa. Super. Ct. May 25, 2016) ("It clearly is proper for a shareholder to inspect corporate records to determine the proper valuation of his stock."); *see also, e.g.*, *Hagy v. Premier MFG. Corp.*, 172 A.2d 283, 286 (Pa. 1961) ("It is a well settled general rule that apparent mismanagement or misconduct by corporate officers provides a sufficient proper and reasonable purpose or objective for inspecting corporate records.").

may not be denied to a stockholder who seeks the information for legitimate purposes[.]'" (quoting *Guthrie v. Harkness*, 199 U.S. 148, 156 (1905))); *see also, e.g.*, *Stuart v. Sterling Lumber*, 78 Pa. D. & C. 86, 88–89 (Pa. Ct. Com. Pl. 1952) (rejecting inspection request where plaintiff shareholder failed "to disclose one particle of testimony which would lead anyone to believe that the company was not being well managed").

32. Here, LORD maintains that it has already provided to McGuire all of its Board minutes relating to the "postponement of the 2017 offering of Class B Stock on April 20, 2017, and the later termination of the [S]tock [P]rogram[.]" (Riggins Aff. ¶ 28.) This information is directly responsive to McGuire's stated purpose for his Board minutes request as articulated and clarified in his deposition testimony—i.e., to review the Board's decision making concerning the repurchase of Class B Stock and the freezing of the Stock Program in 2017—and McGuire has offered only broad conjecture, not evidence, that LORD has withheld or redacted Board minutes relating to LORD's 2017 decisions concerning the Program. (Pl.'s Reply Def.'s Opp'n Pl.'s Mot. Summ. J. 9, ECF No. 95.)

33. McGuire nevertheless seeks broader inspection of Board minutes concerning LORD's merger, acquisition, and divestiture activities from earlier time periods. But McGuire offers no evidence or persuasive argument that any such earlier merger discussions have any bearing on LORD's April 2017 decision to freeze and later terminate the Stock Program, the corporate action that McGuire contends adversely affected his ability to realize the full value of his Class B Stock. The most he offers

is his speculation that because a document McGuire does not identify mentions LORD's incentive plans, LORD "[o]bviously [was] thinking about [incentive plans] in February 2017. So, you know, there's . . . somewhere inside the stack of documents, there's got to be discussions around the decision to cancel and -- right? So that's what we want to know." (Dep. McGuire 194:15–20.) Such is precisely the sort of speculative inspection request the Pennsylvania courts have determined is improper under section 1508. *See, e.g.*, *Klein*, 11 A.2d at 773.

34. Moreover, McGuire's counsel suggested at the Hearing that McGuire's suspicions that earlier or redacted Board minutes reflect merger discussions revealing Board misconduct or decisions concerning his 329 shares were based on nothing more than what counsel termed "water cooler rumors." (Sept. 30, 2020 Hearing Tr. 33:5–7, ECF No. 107; *see also* Pl.'s Reply Def.'s Opp'n Pl.'s Mot. Summ. J. 9 ("As Mr. McGuire communicated in his deposition, rumors of LORD's sale circulated in early 2017.").) Not only does McGuire fail to provide any evidentiary support for any such alleged rumors, but a request based on rumor is one grounded in speculation and makes plain McGuire's request is intended only to satisfy his "idle curiosity." McGuire offers no other evidence that LORD's Board engaged in any improper transaction-related activity, nor does he explain, beyond speculation, how the Board's pre-April 2017 merger-related discussions bear on the Board's decision to freeze the Stock Program in April 2017.

35. While Pennsylvania has afforded a shareholder a broad right of inspection, "th[at] right is neither absolute nor mandatory." *Hagy*, 172 A.2d at 285. Rather, it

is "a limited right which is given for a reasonable purpose." *Id.* Based on the above, the Court concludes that that the evidence of record, viewed in the light most favorable to McGuire, establishes as a matter of law that McGuire's request to inspect LORD's Board minutes concerning its merger, acquisition, and divestiture activities—in addition to those minutes previously produced reflecting the Board's 2017 decision making concerning the Stock Program—was made for speculative purposes and is intended only to satisfy McGuire's idle curiosity rather than for any proper or reasonable purpose recognized by Pennsylvania law. *See, e.g.*, *Klein*, 11 A.2d at 773; *Zerbey*, 560 A.2d at 197. Accordingly, the Court concludes that McGuire's claim seeking inspection of LORD's Board minutes concerning its merger, acquisition, and divestiture activity that have not been produced should therefore be dismissed.[13]

### ii. LORD's Class B Shareholder List

36. As noted, LORD has the burden to show that McGuire's request to inspect LORD's Class B shareholder list is for an improper purpose. LORD argues that because a right to inspect a shareholder list is a "qualified right" and the "primary reason" a shareholder is permitted inspection of a shareholder list under Pennsylvania law is to "to influence the vote at an impending stockholders'

---

[13] Consideration of LORD's concerns for the confidentiality of its Board's discussions regarding potential merger, acquisition, and divestiture activities provides further support for the Court's conclusion. LORD considers its Board minutes of transaction-related activity as confidential and proprietary information and protects that information from disclosure. (Riggins Aff. ¶ 25.) Although the parties vigorously debate whether the corporation's concern for confidentiality is a proper consideration for assessing a shareholder's proper purpose under section 1508(b), the Court concludes that it is in circumstances such as those here. *See Lewis v. Pa. Bar Ass'n*, 701 A.2d 551, 554 (1997) (holding in the non-profit context that "[t]he scope of records to which a member has access is further limited by considerations of privacy, privilege and confidentiality").

meeting[,]" (Def.'s Br. Supp. Mot. Summ. J. 17, ECF No. 83 (quoting *Goldman v. Trans-United Indus., Inc.*, 171 A.2d 788, 791 (Pa. 1961))), McGuire should be denied inspection because LORD's Class B shares were non-voting and McGuire's sale of those non-voting shares eliminates entirely any interest he might have had in a vote of LORD's shareholders. LORD argues that inspection is particularly inappropriate here when the Court considers that LORD zealously protects from disclosure its Class B shareholder list, which essentially reflects the compensation it has paid to its higher-ranking employees over time through Class B share grants. (Def.'s Br. Supp. Mot. Summ. J. 18.)

37. For his part, McGuire asserts that an inspection of the shareholder list he seeks will show that others were permitted to buy back their Class B shares in a way that he was denied. (2nd Dep. McGuire 237:25–38:6 ("I wouldn't use [the list of shareholders] for any other purpose other than as described, which is to try to determine whether [LORD] treated all shareholders fairly or not. I have a suspicion they didn't. And this is based on my one transaction that I did with them where they turned around and did what they did."), 363:16–24 ("Because I believe that the list of shareholders prior to freeze as well as the list shareholders prior to sale will show a movement in shareholder positions.").)

38. The Pennsylvania Supreme Court has recognized that "[c]ourts tend to be more lenient as to the inspection of stockholder lists than inspections of books and records[,]" in part, because obtaining a list of shareholders is considered a "relatively harmless act[.]" *Goldman*, 171 A.2d at 791. Indeed, at common law, "[t]he law

presume[d] . . . that the list [was] desired for a proper purpose, and he who denie[d] this ha[d] the burden of clearly and explicitly averring and proving that he [was] right[.]" *Hauser v. York Water Co.*, 123 A. 330, 332 (Pa. 1924). That same deference exists under the common law's codification in section 1508(b). *See, e.g., Goldman*, 171 A.2d at 791 (noting that "the right to obtain a list of stockholders [should be] granted liberally").

39. Applying these principles here, the Court concludes that McGuire has established as a matter of law his proper purpose under section 1508 in seeking inspection of LORD's Class B shareholder list. Although his is not the classic purpose of seeking a list to influence a vote at an upcoming shareholder meeting, McGuire has articulated a desire to use the list to assist in valuing his alleged losses from selling his shares and in determining whether the Board engaged in misconduct in permitting some shareholders, but not McGuire and possibly others, to repurchase Class B shares after the Stock Program was frozen in April 2017.

40. Given Pennsylvania's leniency in considering the propriety of requests for shareholder lists, the Court concludes McGuire's purpose is proper under section 1508(b). *See, e.g., Sto-Rox Focus on Renewal Neighborhood Corp. v. King*, 398 A.2d 241, 243 (Pa. Commw. Ct. 1979) ("Inspection of corporate records to determine whether a corporation is managed properly is a reasonable purpose."); *Marks v. E. Franks Hopkins*, No. 003618, 2004 Phila. Ct. Com. Pl. LEXIS 38, at *10 (Pa. Ct. Com. Pl. July 21, 2004) (finding that "plaintiff's request to examine records to determine the value of his shares is a proper purpose" and "reasonably related to plaintiff's

interest as a shareholder" (citing *Friedman v. Altoona Pipe & Steel Supply Co.*, 460 F. 2d 1212 (3d Cir. 1972))); *see generally Zerbey*, 560 A.2d at 197 n.3 (recognizing that a shareholder's right to a shareholder list is "more liberally construed" than a request for other corporate records).

41. As noted above, however, section 1508(c) permits the trial court to, "in its discretion, prescribe any limitations or conditions with reference to the inspection or award such other or further relief as the court deems just and proper." 15 Pa.C.S. § 1508(c). The Court concludes, in the exercise of its discretion, that certain limitations and conditions on McGuire's inspection of LORD's Class B shareholder list are appropriate here.

42. In particular, the Court notes that McGuire's stated purpose for the list, as made clear in his deposition testimony, is to determine whether and when other Class B shareholders were permitted to repurchase their shares after the Stock Program was frozen in April 2017. (*See* McGuire Dep. 363:16–24.) He purports to learn this by comparing shareholder lists from just before the Stock Program freeze date and at the time of LORD's sale to Parker-Hannifin over two years later. LORD's principal concern in producing its shareholder list as requested is in disclosing its employees' compensation.

43. It appears to the Court that McGuire can satisfy his stated purpose by receiving the names and addresses of LORD's Class B shareholders as of April 19, 2017, the day before the Board decided to freeze the Stock Program, and a list of any Class B shareholder repurchase transactions (identified only by name and date and

not by number of shares transacted) occurring after the Stock Program was frozen on April 20, 2017 until the day the Program was terminated on December 19, 2017. This information would enable McGuire to determine whether any Class B shareholder was permitted to engage in a post-freeze repurchase and would fully satisfy McGuire's stated purpose without requiring LORD to disclose the number of shares held by any Class B shareholder and thus violate its employees' legitimate expectations of privacy concerning their compensation.

44. Given that LORD has offered undisputed evidence that it has a substantial interest in protecting the confidentiality of its employee compensation and McGuire has not offered any evidence showing that share information is necessary to satisfy his stated purpose for inspection, the Court concludes that permitting McGuire inspection of the Class B shareholder list with the limitations and conditions outlined above is reasonable and appropriate under section 1508(c). *See, e.g., Lewis*, 701 A.2d at 554. Nevertheless, should LORD prefer, the Court will permit LORD, at its sole election, to satisfy its inspection obligation hereunder by producing to McGuire the names, addresses, and shareholdings of LORD's Class B shareholders as of April 19, 2017 and December 19, 2017.

IV.

CONCLUSION

45. **WHEREFORE**, based on the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** each Motion as follows:

a. As to McGuire's claim seeking inspection of LORD's Board minutes concerning its merger, acquisition, and divestiture activities, LORD's Motion is **GRANTED**, McGuire's Motion is **DENIED**, and McGuire's inspection claim as to these corporate records is **DISMISSED with prejudice**; and

b. As to McGuire's claim seeking LORD's Class B shareholder list, McGuire's Motion is **GRANTED**, LORD's Motion is **DENIED**, and the Court, in the exercise of its discretion and consistent with its authority under 15 Pa.C.S. § 1508(c), hereby enters **JUDGMENT** on McGuire's claim for the Class B shareholder list as follows:

i. Within thirty-five (35) days of the entry of this order,[14] LORD shall (a) produce to McGuire for inspection and copying the names and addresses (but not the shareholdings) of LORD's Class B shareholders as of April 19, 2017, the day before the Board

---

[14] The Court has selected the date for compliance, mindful of the notice of appeal period under Rule 3 of the North Carolina Rules of Appellate Procedure, to permit each party an adequate opportunity to either move for reconsideration or to appeal and seek appropriate interim relief prior to compliance should either choose to do so. While a motion to reconsider will likely result in a swifter resolution than an appeal, the Court reminds the parties that this Court, relying on federal law, has concluded that the permitted grounds for reconsideration are "fairly narrow[,]" *In re Se. Eye Ctr.-Judgments*, 2017 NCBC LEXIS 77, at *9 (N.C. Super. Ct. Aug. 22, 2017) (quoting *Akeva, L.L.C. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 565 (M.D.N.C. 2005)), and include "(1) the discovery of new evidence, (2) an intervening development or change in the controlling law, or (3) the need to correct a clear error or prevent manifest injustice[,]" *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2019 NCBC LEXIS 7, at *8 (N.C. Super. Ct. Jan. 25, 2019) (quoting *Wiley v. Buncombe Cty.*, 846 F. Supp. 2d 480, 487 (W.D.N.C. 2012)). The Court has further noted that "[a] motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending." *W4 Farms, Inc. v. Tyson Farms, Inc.*, 2017 NCBC LEXIS 99, at *5 (N.C. Super. Ct. Oct. 19, 2017) (quoting *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015)).

decided to freeze the Stock Program, and a list of any Class B shareholder repurchase transactions occurring after the Stock Program was frozen on April 20, 2017 (identified only by name, address, and date but not by shares transacted) through the Stock Program's termination on December 19, 2017; or, alternatively, in LORD's sole election, (b) produce to McGuire for inspection and copying the names, addresses, and shareholdings of LORD's Class B shareholders as of April 19, 2017 and as of December 19, 2017.

**SO ORDERED**, this the 19th day of January, 2021.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge